HOWARD E. CRANE, APPELLEE, V. CHARLES W. WHITCOMB, APPELLEE, IMPLEADED WITH MRS. NEVILLE WHITCOMB, APPELLANT.
70 N. W. 2d 496

Filed June 3, 1955.   No. 33761.

*Kennedy, Holland, DeLacy & Svoboda* and *Lawrence J. Tierney*, for appellant.

*James J. Fitzgerald* and *Mathews, Kelley, Fitzgerald & Delehant*, for appellee Crane.

*Caniglia & Inserra*, for appellee Whitcomb.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Howard E. Crane, known to some as "Bud," brought this action against defendants Charles W. Whitcomb and Mrs. Neville Whitcomb, seeking damages resulting from an assault upon plaintiff by defendant Charles W. Whitcomb with a loaded revolver, which occurred about 11 p. m., July 4, 1951, in the street outside of a tavern owned and operated by defendant, Mrs. Neville Whitcomb. Defendants were husband and wife. Plaintiff's amended petition originally sought recovery from defendant, Mrs. Neville Whitcomb, hereinafter generally called defendant, upon the theory of respondeat superior. Thereto she answered, denying generally and specifically plaintiff's allegations with relation to that theory. The pleas of defendant Charles W. Whitcomb, hereinafter generally called Whitcomb, are of no importance here because he took no appeal from a verdict and judgment rendered thereon against him. The cause proceeded to trial to a jury, and at conclusion of plaintiff's evidence, defendant's motion to direct a verdict or dismiss plaintiff's action against her for insufficiency of the evidence was overruled. At conclusion

of all the evidence the trial court, over appropriate objections made by defendant, sustained plaintiff's motion to amend his amended petition purportedly to conform to the proof and predicate his cause of action against defendant for alleged negligence by her, proximately causing plaintiff's injuries, rather than respondeat superior. The trial court then overruled defendant's motions for mistrial or new trial, or to direct a verdict or dismiss plaintiff's action against defendant for want of sufficient evidence. Defendant then filed an answer preserving her objection to plaintiff's permitted amendment, denying that she was negligent in any manner, as alleged by plaintiff, and alleging that negligence of plaintiff, more than slight, was the proximate cause of his injuries. As to such defendant, the issues were then submitted to the jury upon plaintiff's amended theory of negligence and defendant's answer thereto, including plaintiff's alleged contributory negligence pleaded by her.

With regard to defendant Whitcomb, the court directed a verdict for plaintiff and submitted to the jury only the issue of the amount of damages. The verdict of the jury assessed "plaintiff's damages at $10000.00 of which amount both defendant's are jointly liable for $7000.00 and for the remainder of $3000.00 the defendant Charles W. Whitcomb is individually and alone liable," and judgment was accordingly rendered thereon. Defendant Whitcomb's motion for new trial was overruled, but he did not appeal. Defendant Mrs. Neville Whitcomb's motion for judgment notwithstanding the verdict or in the alternative for new trial, was also overruled, but she appealed. Insofar as important here, she assigned that the trial court erred in failing to direct a verdict at conclusion of all the evidence and in overruling defendant's motion for judgment notwithstanding the verdict. We sustain the assignment. In doing so, we are not required to discuss whether or not the trial court erred in permitting plaintiff to amend as aforesaid.

This is true because, as hereinafter observed, the evidence was insufficient in any event to permit any recovery from defendant, Mrs. Neville Whitcomb.

In Umberger v. Sankey, 151 Neb. 488, 38 N. W. 2d 21, we held: "A motion for a directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence."

In plaintiff's brief it is said: "We make no contention that Mr. Whitcomb was an 'employee'; we say that he was an agent and that he had the right to and did participate in maintaining good order on the premises." In that connection, as said in Restatement, Agency, § 250, p. 559: "Except as stated in § 251, a principal is not liable for physical harm caused by the negligent physical conduct of an agent, who is not a servant, during the performance of the principal's business, unless the act was done in the manner directed or authorized by the principal or the result was one intended or authorized by the principal." In Nebraska Annotations thereto, § 250, p. 111, it is said: "This section states the Nebraska law. Omaha Bridge & Term. Ry. v. Hargadine, 5 Neb. Unof. 418, 98 N. W. 1071." Section 251, p. 560, reads in part: "A principal is subject to liability for physical harm to the person or the tangible things of another caused by the negligence of an agent who is not a servant: (a) in the performance of an act which the principal is under a duty to have performed with care under the rule stated in § 214; * * *." Nebraska Annotations thereto, § 251, p. 111, says: "This section states the Nebraska law so far as the first clause is concerned. See cases cited in annotation to § 214." Section 214, p. 471, reads: "A master or other principal who is under

a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other agent is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty." Nebraska Annotations thereto, § 214, p. 98, reads: "This section is in accord with the Nebraska law. Clancy v. Barker, 71 Neb. 83, 98 N. W. 440, 103 N. W. 446, 69 L. R. A. 642, 115 Am. St. Rep. 559, 8 Ann. Cas. 682 * * *." In such case, on rehearing at 71 Neb. 91, 103 N. W. 446, 115 Am. S. R. 559, 69 L. R. A. 642, adhering to the former judgment, it is held: "The relation of master and servant does not render the master liable for the torts of the servant, unless connected with his duties as such servant or within the scope of his employment."

As held in Davis v. Houghtellin, 33 Neb. 582, 50 N. W. 765, 14 L. R. A. 737: "A master is liable to third persons for damages resulting from the negligence of his servants only when the latter is acting within the scope of his employment." In the opinion, quoting from Morier v. St. Paul, M. & M. Ry. Co., 31 Minn. 351, 17 N. W. 952, 47 Am. R. 793, with approval, and citing other authorities, it is said: " 'Beyond the scope of his employment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment. A master is not responsible for any act of omission of his servant which is not connected with the business in which he serves him, and does not happen in the course of his employment. And in determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service and pursuing his own ends exclusively, the master is not responsible. If the

servant was, at the time when the injury was inflicted, acting for himself and as his own master, pro tempore, the master is not liable. If the servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities.' "

Such Nebraska case is cited with approval in Rich v. Dugan, 135 Neb. 63, 280 N. W. 225, along with other authorities from this and other jurisdictions. See, also, Allertz v. Hankins, 102 Neb. 202, 166 N. W. 608, L. R. A. 1918F 534.

In that connection, we may assume for purpose of argument only, that defendant Whitcomb was an agent or servant of defendant, and under the circumstances in this case there could still, as a matter of law, be no recovery from defendant Mrs. Neville Whitcomb.

On the other hand, if Whitcomb was not an agent or servant of defendant but simply a third person or patron in defendant's tavern, there could be no recovery from defendant. In Hughes v. Coniglio, 147 Neb. 829, 25 N. W. 2d 405, citing authorities, we said: "The modern general rule, summarized in its simplest terms, is that the proprietor of a place of business who holds it out to the public for entry for his business purposes, is subject to liability to members of the public *while upon the premises for such a purpose* for bodily harm caused to them by the accidental, negligent, or intentionally harmful acts of third persons, if the proprietor by the exercise of reasonable care could have discovered that such acts were being done or were about to be done, and could have protected the members of the public by controlling the conduct of the third persons or *by giving a warning adequate to enable them to avoid harm.*" (Italics supplied.) See, also, Fimple v. Archer Ballroom Co., 150 Neb. 681, 35 N. W. 2d 680. In that connection, it was also held that when the evidence viewed in the light

most favorable to plaintiff fails to establish actionable negligence, it is the duty of the trial court to direct a verdict for defendant or render a judgment notwithstanding the verdict if motions therefor are timely and appropriately made.

In the light of such rules, we have examined the record. It discloses as follows: Plaintiff was a self-employed sign painter in Omaha. He was 35 years old, 6 feet tall, and weighed 205 pounds. Whitcomb was 53 years old, 5 feet 8 inches tall, and weighed 140 or 145 pounds. Defendant was not quite 5 feet tall and weighed 135 pounds. In the evening of July 4, 1951, plaintiff, his wife, and some relatives watched the fireworks at Fontenelle Park. They got home about 10:30 p. m. It was hot and plaintiff wanted a glass of beer, so he got in his truck alone and drove over to Whitcomb's Halfway Tavern, located a little over a block and a half away from his home. He got there about 10:35 or 10:40 p. m., parked his truck in front of the tavern, went in, walked up to the east end of the bar, ordered a glass of beer, and was served.

The tavern building, owned entirely by defendant, is about 50 feet long and 25 feet wide. It faces east and extends to the west, with a front entrance on the northeast corner. There is quite a large adjacent back yard with a lawn west of the building. The bar extends along the south side of the tavern room. Rest rooms are located at the west or back end of the room, and nearby is a stairway going downstairs where defendant and Whitcomb lived. Two lines of tables, with about six in each line, were scattered along the tavern room. Defendant was also the sole owner of the tavern and all its equipment. The Class "C" license therefor was in her name and she had operated the tavern entirely as her own separate business, with her own separate bank account, since May 1945. She employed three bartenders part time, who took their turns working. The tavern operated on week days from 7 a. m. to 1 a. m.,

and on Sundays from 1 p. m. to 1 a. m. Defendant supervised it, and visited with and served customers. Whitcomb owned and operated his own separate automobile brake repair business some distance away, and had no interest whatever in the tavern business. He was not an employee of defendant but about every 2 weeks or a month, defendant, who had her own separate lunch counter business in the tavern, would season and prepare ribs to be barbecued and Whitcomb would barbecue them for her in a pit out in the yard back of the tavern. Sometimes when in the tavern Whitcomb would carry cases of beer for defendant from a back storage room to the bar, or when they were busy he would sometimes carry drinks from the bar to customers at the tables when asked by the bartenders to do so. He had been seen to serve customers at the bar upon one or more occasions. When Whitcomb and defendant were alone he usually locked the front door at closing time while defendant checked out. Sometimes he carried the gun up with him at closing time for fear of a stick-up, but there was no evidence that defendant knew about it, and it was not closing time when the shooting occurred.

Whitcomb did none of the foregoing things on July 4, 1951. On that day, he got up about 10 a. m., had breakfast, mowed the lawn, helped defendant pick cherries in the back yard, and worked around outside during the afternoon until evening. He drank one bottle of beer during the day. He then went back to their living quarters until about 8 p. m. when he came up to the tavern in his work clothes. Defendant was not working that night unless the tavern was crowded.

There had never theretofore, since July 1945, been any disorder or trouble in the tavern. After 9 p. m. three people, one of whom was Robert E. Carroll, known as Bob, were sitting at a table near the middle, about two tables from the front door. Whitcomb came over and sat down with them. They were drinking pepper-

mint schnapps and a glass of beer. Whitcomb was seen to drink two such drinks during about 30 or 40 minutes. Whether or not he became intoxicated is in dispute. Some witnesses said that he was, but a police officer who came to the tavern right after the shooting about 11 p. m. testified that Whitcomb was not intoxicated. Another witness verified that. Defendant testified that Whitcomb had three or four beers that evening, but she saw no peppermint schnapps.

While sitting at the table Whitcomb got into an argument with Carroll, and told him "he was not wanted and to take his money and spend it someplace else," or "to get out and stay out." Plaintiff walked from the back of the room where he had been watching T. V. as he usually did there on Wednesday and Friday nights, and going up to the bar, ordered another glass of beer. He heard the argument between Carroll and Whitcomb and saw defendant come up and say something to Whitcomb, who pushed her in the stomach with the back of his hand and said "get away from there." Plaintiff and Whitcomb had been good friends for a long time, so plaintiff said to Whitcomb, "Bill, why don't you behave yourself," or "simmer down," "Bill, why don't you act your age." To that Whitcomb replied, "That goes for you, too, Bud, you don't have to come around here either." Plaintiff then said, "Bill, don't talk to me like that." Thereupon Whitcomb got up and plaintiff grabbed him, pinned his arms down in a bearhug, and took him over to set him down in a chair. However, plaintiff pulled Whitcomb's arm too hard, whereupon Whitcomb broke away and was pushed or thrown into a chair and slid under the table, spilling beer. Defendant, who was at the back near the lunch counter, then called police. In the meantime, Whitcomb got up and, moving very agilely, went back to the washroom where someone said, "Where are you going now?" and he replied, "I'm going into the toilet." He did so but came out again, saying, "No one is going to throw me down. I'm

going to get a gun." Thereupon the party who had so talked with him started outside and said to plaintiff and all others in the tavern, "He went to get a gun and I think everybody should leave to avoid trouble." All of them, including plaintiff, then went outside where plaintiff got in his truck, called to Carroll, "Come on, Bob, I'll take you home," and Carroll also got into plaintiff's truck. Plaintiff then saw Whitcomb come up from the basement and start to drink a beer at the bar, so plaintiff backed out into the middle of the street or farther to the north and turned west to leave when Whitcomb came out the front door and called, "Come here, Bud." Plaintiff then drove his truck back into the curb, put on the brakes, and turned off the motor, at which time Whitcomb came around to the side of the truck and plaintiff started to get out. He then saw a gun come out of Whitcomb's pocket, and plaintiff lunged for it, but before he could reach it the gun went off, striking plaintiff in the stomach. Plaintiff immediately got hold of the gun, took it away, gave it to another man standing nearby, and knocked Whitcomb down. Plaintiff then went back inside the tavern and said to defendant, "I'm shot," whereupon she called an ambulance and again called police. It was then about 11 p. m. The police came as did an ambulance, whereat plaintiff was taken to a hospital and Whitcomb was taken to the police station.

However, no information charging Whitcomb with the crime of shooting plaintiff with intent to wound or maim was filed until January 22, 1952, when he pleaded guilty and was put on probation for 2 years. He had been discharged therefrom before the trial. The .38 caliber revolver belonged to Whitcomb and was registered in his name with the police in 1945 or 1946. It was kept loaded in a dresser drawer in their home. Defendant knew that he owned the gun but did not know whether or not it was loaded, and she never had it at

the bar and never authorized Whitcomb to be there with it.

Defendant was up in the tavern nearly all evening from 8 or 9 p. m., working and visiting with customers. There is evidence that she was back of the bar when Whitcomb went downstairs. She did not see him go to the basement. She took an empty case to the garage at the back and when she returned the place was empty and she wondered why. She heard no warning that people should leave, did not know that Whitcomb had the gun, and heard no shot. She looked up just as he went out the door and when she started toward the door plaintiff came inside the tavern again.

It will be observed from the foregoing that defendant was not guilty of any negligence proximately causing plaintiff's injuries, and if she were, plaintiff had ample warning of danger which enabled him to be in a place of safety and to have avoided harm had he driven his truck away from the premises instead of parking it at the curb again. Further, under the evidence in this record, defendant owed plaintiff no duty where his injuries occurred off the premises in the street, when he voluntarily so returned for his own purposes and not for any business purpose in or with the tavern. In so doing, we conclude that he was guilty of negligence more than slight as a matter of law, which barred any recovery from defendant, Mrs. Neville Whitcomb.

For reasons heretofore stated, we conclude that the judgment against defendant, Mrs. Neville Whitcomb, should be and hereby is reversed and the cause is remanded with directions to render a judgment for such defendant, notwithstanding the verdict of the jury, and absolve her of all liability for any costs in the district court. All costs in this court are taxed to plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.