ELDON FARR, APPELLEE, V. CAMBRIDGE CO-OPERATIVE OIL
COMPANY, A CORPORATION, APPELLANT.
81 N. W. 2d 597

Filed March 8, 1957. No. 34082.

*Aten & Chadderdon,* for appellant.

*Morrison, Lyons & Starrett,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Eldon Farr, brought this action against de-
fendant, Cambridge Co-Operative Oil Company, a do-
mestic corporation, seeking to recover damages for al-
leged personal injuries. Plaintiff predicated his right
of recovery upon allegations that two named employees
of defendant negligently and in disregard of plaintiff's
safety set off an explosion while on duty and in fur-

therance of defendant's business; that defendant's managers, having knowledge of the facts while acting for and on behalf of defendant, negligently permitted the practice to continue; and that the permitting of such explosion on or about defendant's premises constituted an actionable nuisance which was the proximate cause of painful injuries in and around plaintiff's ears and partial loss of his hearing. In that connection, plaintiff relied upon the alleged negligence of defendant, and his nuisance theory was not an issue in the trial court. Thus, it was not presented or argued in this court.

Insofar as important here, defendant's answer denied generally; denied specifically that the alleged acts of its employees were within the scope of their employment or in the furtherance of defendant's business; and denied specifically that defendant or its management had any knowledge of the circumstances alleged, or that its management suffered or permitted the practice to continue as alleged. Plaintiff's reply was a general denial.

The cause was tried to a jury whereat defendant's motions for directed verdict or dismissal, made at conclusion of plaintiff's evidence and again at conclusion of all the evidence, upon the ground of insufficiency of the evidence to support a verdict in favor of plaintiff, were overruled. After submission of the cause to the jury, it returned a verdict for plaintiff and judgment was rendered thereon. Subsequently defendant's motion for judgment notwithstanding the verdict or in the alternative for new trial, was overruled. Therefrom defendant appealed to this court, assigning among other alleged errors that the trial court erroneously failed to sustain defendant's motion for judgment notwithstanding the verdict. We sustain that assignment, which disposes of all others.

In that connection, defendant relied upon the general rule stated in Crane v. Whitcomb, 160 Neb. 527, 70 N. W. 2d 496, and cases cited therein, that: "The relation

of master and servant does not render the master liable for the torts of the servant, unless connected with his duties as such servant or within the scope of his employment."

Concededly, the acts and conduct of defendant's employees, hereinafter recited, were not connected with their duties as servants of defendant or in the furtherance of defendant's business, or within the scope of their employment. Also, as stated in 57 C. J. S., Master and Servant, § 574 (c), p. 327, citing authorities: "If the servant does an act merely to frighten a third person * * * or to perpetrate a joke on a third person, and the act is entirely disconnected from the purpose of the employment, the master generally is not liable therefor."

However, such rules do not solve the problem presented if plaintiff, by a preponderance of competent evidence, has established his rights to recover under a related exception hereinafter set forth. In that connection, as stated in Restatement, Torts, § 317, p. 860: "A master is under a duty to exercise reasonable care so to control his servant while acting outside the course of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if (a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using a chattel of the master, and (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control." Such statement was construed and applied in Ford v. Grand Union Co., 268 N. Y. 243, 197 N. E. 266, and Dincher v. Great Atlantic & Pacific Tea Co., 356 Pa. 151, 51 A. 2d 710, citing numerous authorities. The latter case also cites numerous other related authorities in a note appended thereto.

We have examined the record in the light of the aforecited authorities, together with the rule that: "A mo-

tion for directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence." Crane v. Whitcomb, *supra*.

It is undisputed that on November 29, 1954, between 4 and 5 p. m., plaintiff, a farmer customer of defendant, drove his Chevrolet truck up to the pumps at defendant's motor vehicle gasoline and repair service station to have it serviced. He ordered gasoline for his truck, went into the men's rest room, and shut the door. While plaintiff was therein two employees' of defendant then on duty decided to have some fun and play a joke or prank upon plaintiff. Thus, they went over into defendant's wash, grease, and repair room where they took a firecracker, about 2 inches long and thick as a pencil, out of a drawer in an old school desk standing about midway along the south wall. In that connection, firecrackers were not sold or handled by defendant as any part of its business. One of defendant's employees lit the firecracker while the other held it and then either placed it in or dropped it in front of the rest room grated ventilator sitting upright on the floor. There the firecracker exploded, as a result of which plaintiff claimed to have received personal injuries and damages.

The record discloses that the drawers in the desk from which the firecracker was taken contained complete sets of tools for special types of work and two or three firecrackers. There is no evidence that such desk was ever used by the manager. It is not shown when such firecrackers were placed therein, but it is clear that W. E. Jones, defendant's manager since January 1, 1953, did his work in the office and never knew that any fire-

crackers were in the desk or that any had been exploded by defendant's employees at or about the premises. He was not at the station at the time of the explosion on November 29, 1954, and knew nothing about it until 5 or 6 days afterward. At that time he inquired of his employees about it, and upon learning the facts, disposed of the remaining firecrackers and made it plain to defendant's employees that there should be no more such actions.

A man who had been employed by defendant during 1949 and 1950 as a station attendant, and during 1952, 1953, and until July 5, 1954, as a propane truck driver when he was discharged by defendant's manager, testified as a witness for plaintiff. He testified substantially as follows: That while he was so employed, Ervin Bennett, Keith Golden, Burgess Fultz, Don Sickles, and W. E. Jones had respectively been managers for defendant. He testified that during such years of employment he had shot off some firecrackers himself and saw certain employees of defendant shoot off fair-sized firecrackers at least four times in defendant's workroom or outside defendant's station. He could not remember either the year or the time of year when this was done. He did not know who brought the firecrackers there or when that was done, but knew that they were in that desk or elsewhere in the workroom and some remained in the desk when he left. He once brought some small firecrackers upon the premises. He testified that as far as he knew no manager was ever there when firecrackers were taken out of the desk or when they were exploded, but they might have been. He testified that former managers Fultz and Bennett had directed defendant's employees not to bring to or explode any firecrackers on or about the station, and they obeyed, but he shot one off in the workroom sometime during 1954.

We find no competent evidence adduced by such witness from which it could be reasonably concluded that

any manager of defendant ever knew or should have known that firecrackers were upon defendant's premises or that any had been previously exploded on or about defendant's premises by its employees. Plaintiff's contention otherwise is based entirely upon hearsay, speculation, and conjecture.

Another witness for plaintiff testified that once when he was in the rest room at defendant's station he heard an explosion which sounded like a shotgun. He testified that two named employees of defendant were around the station at that time although he did not see the firecracker or the explosion itself, but heard afterward that it was caused by a firecracker. He did not know who caused the explosion, and was not certain when it occurred, but thought it was in November 1953. He was certain that it did not happen in 1952 or 1954. The fact is, however, that one such employee named by him testified while a witness for plaintiff that he was not there at the time of such claimed explosion and knew nothing about it. Concededly, he never was employed by defendant until after August 1, 1954.

When such employee was called as a witness for defendant he testified that he lit the firecracker on November 29, 1954, but had never seen other firecrackers exploded in or about the station, and did not know who put firecrackers in the desk. After the explosion of November 29, 1954, occurred and manager Jones learned about it 5 or 6 days later, he reprimanded the witness and made it pretty plain to defendant's employees that it must never happen again.

Another witness for defendant testified that he had been employed at defendant's station full time from November 1945 to June 10, 1955, and heard but did not see the explosion on November 29, 1954. He never found any firecrackers around the station, but knew that there were some in the desk. He never heard or saw any explosion of firecrackers there except once when two of defendant's employees exploded one while he was

in the rest room some 4 or 5 years ago. He knew that several years before a buzz bomb had been placed in another employee's car out in defendant's car parking lot.

Another witness for defendant had been employed at the station for more than 3 years. He kept some fire-crackers in the desk in the workroom. He admitted that another employee got the firecracker out of the desk and he held it while it was lit by the other employee, after which he dropped it in front of the rest room ventilator on November 29, 1954. Defendant's employees were friendly with plaintiff and had joked with him upon other occasions when he had been there. There is no evidence that the two who caused the explosion had any intention of harming him. The witness had exploded a firecracker only once 2 or 3 weeks before November 29, 1954, at the same place when another man was in the rest room and while the manager was away, and they all had a good laugh about it. He had heard that one firecracker had been so exploded sometime before he came there to work 3 years ago. The explosion on November 29, 1954, was the only one manager Jones ever knew about, and upon subsequently learning of it he made it plain that it should never occur again.

In the light of such evidence, it is conclusive that defendant's employees had no intention to harm plaintiff, and the explosion occurred upon the premises in possession of defendant but without using any chattel of defendant. It could be reasonably concluded that defendant's two employees so conducted themselves outside the scope of their employment by exploding a firecracker in or about a gasoline service station as to create an unreasonable risk of bodily harm to plaintiff. However, under the evidence adduced plaintiff was not injured by any facility or property of defendant. It could not be reasonably concluded with regard to the conduct involved that defendant's manager Jones timely

knew or had any reason to know, or that any previous manager of defendant timely knew or had any reason to know, that they had the ability to control defendant's employees, or that they knew or should have known of the necessity and opportunity for exercising such control.

In Ford v. Grand Union Co., *supra,* speaking of the duty of a master to control his servants on his business premises, it is said: "The duty, if any, is certainly not absolute. The owner of property not inherently dangerous, who does not knowingly permit others to put the property to a dangerous use, is not subject to any absolute duty to prevent unauthorized persons from putting it to a dangerous use. Here there must be at least notice that a dangerous use is threatened, and perhaps acquiescence in such use. Again, where there is no notice that an employee is in the habit of acting in a manner dangerous to others, there is no duty to control the actions of the employee outside the scope of his employment. Such limitations, at least, are dictated by fundamental principles of tort liability. Without them there would be no room for the doctrine that a person is responsible only for the result of his own fault or the fault of his servants, acting within the scope of their employment.

"In some cases, nevertheless, the possessor of property used for business has been held liable for failure to control his servants, though acting outside the scope of their employment, or other persons permitted to come upon or use such property. It is to be noted, however, that even in these cases, the courts held that the duty was not absolute, but relative. It arises only where, from the nature of the authorized use of property or from a course of conduct of visitors or of employees employed upon or in connection with the property, the possessor has notice that the use of his property, by persons acting without his authority but whom he could control, may cause danger to members of the general public. When such duty exists, it is limited to the exercise of skill and

care commensurate to the danger which may reasonably be anticipated. * * * Where danger cannot reasonably be anticipated there is no duty to guard against it; after knowledge or notice of danger is present there must be reasonable opportunity to guard against the danger. Here no want of care by the defendant is shown, for at the moment when duty arose, opportunity to use care disappeared." See, also, Dincher v. Great Atlantic & Pacific Tea Co., *supra*. Such statement and authorities heretofore cited are applicable and controlling here.

We conclude that the evidence was insufficient to support a verdict for plaintiff and judgment thereon. Therefore, the judgment should be and hereby is reversed and the cause is remanded with directions to sustain defendant's motion for judgment notwithstanding the verdict and dismiss plaintiff's action. All costs are taxed to plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.