WILLIAM WELSH, APPELLEE, V. LEONARD ZUCK, APPELLANT,
IMPLEADED WITH BETTY L. ZUCK ET AL., APPELLEES, RE-
VIVED IN THE NAME OF HERBERT ZUCK, SPECIAL ADMINIS-
TRATOR OF THE ESTATE OF LEONARD ZUCK, DECEASED,
APPELLANT.

218 N. W. 2d 236

Filed May 23, 1974. No. 39279.

(1)

 

Russell, Colfer, Lyons & Wood, for appellant.

Terry E. Savage and Frederick E. Wanek, for appellee Welsh.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, Mc-COWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This is an action brought by William Welsh, plaintiff and appellee, to recover damages sustained as a result of being shot in the thigh by one of the defendants, Chester Rima, during a scuffle over a gun which occurred in a tavern owned and operated by the defendant, Leonard Zuck. Made additional defendants in the original action were Betty L. Zuck, wife of the defendant Leonard Zuck, who was later dismissed from the lawsuit by the court, and the defendant Mike Jones, the bartender on duty at the time of the shooting.

Trial was subsequently had to the jury, which found for the plaintiff William Welsh against the defendants Chester Rima and Leonard Zuck, and also found in favor of the defendant Mike Jones. The barowner, Leonard Zuck, is now deceased. The special administrator of his estate, Herbert Zuck, is the only appellant in this court. The basis for the appeal is that the evidence was insufficient against defendant Zuck and the matter should not have been submitted to the

jury with regard to his liability. At the close of plaintiff's case-in-chief, and again at the close of all the evidence, motions were made by defendant Zuck for a directed verdict or a dismissal as to him. These motions were overruled and the cause was submitted to the jury with the result above indicated. Defendant Zuck then moved for judgment notwithstanding the verdict and likewise moved for a new trial. These motions were overruled. The rule is well established in this jurisdiction that when the evidence viewed in the light most favorable to plaintiff fails to establish actionable negligence, it is the duty of the trial court to direct a verdict for defendant or render a judgment notwithstanding the verdict, if motions therefore are timely and appropriately made. Crane v. Whitcomb, 160 Neb. 527, 70 N. W. 2d 496 (1955); Hughes v. Coniglio, 147 Neb. 829, 25 N. W. 2d 405 (1946). We shall therefore review the facts of this case, as disclosed by the evidence in the record, "in the light most favorable to plaintiff."

Generally, the incident with which this case is concerned involved the accidental shooting of the plaintiff while he was a customer in appellant's tavern, known as Sarge's Tavern in McCook, Nebraska. The actual shooting occurred in the early morning of March 8, 1972, a few minutes after midnight, although the events which led up to the shooting occurred on March 7, and possibly on March 6. There is some conflict in the evidence as to whether a certain conversation between the tavern owner, Zuck, and the defendant, Rima, occurred on March 6 or during the morning or early afternoon of March 7. This conversation dealt with the request on the part of either Rima or Zuck for the "targeting in" of a certain pistol owned by Rima. Defendant Zuck was an expert in the use and handling of firearms, having gained experience in that field while serving in the armed forces of the United States.

In any event, it is clear from the evidence that on March 7, 1972, defendant Rima brought his pistol into Sarge's Tavern, and that defendants Zuck and Rima took the pistol to the basement of the establishment, where was located a former police firing range. Zuck fired the pistol two or three times, loading the gun one shell at a time. After finishing the "targeting in" of the pistol, Zuck checked the pistol to make certain it was unloaded and handed it back to Rima in an unloaded condition, whereupon they went back upstairs. Rima testified that he then asked the bartender on duty at that time to put the gun behind the bar for him until he returned for it later. The bartender obliged. According to Rima, Zuck saw him give the pistol to the bartender at that time. This was denied by Zuck. However, we shall consider it as true on the theory that we must consider the evidence in the light most favorable to the plaintiff. Rima remained in the tavern for a short time thereafter and then left. Zuck also left the establishment and was not in Sarge's again on the afternoon or night of March 7. Rima, however, did return to Sarge's on the evening of March 7; and at approximately 9 p.m. asked the night bartender, the defendant Mike Jones, to give him the pistol. The evidence is undisputed that Jones had not known about the gun being in the cabinet, the day bartender not having informed him of that fact. Before returning the pistol to Rima, Jones checked it to ascertain whether it was loaded and found that it was not. He thereupon gave the gun to Rima, who left the premises taking the gun with him. He returned to the tavern approximately 45 minutes later, and in the meantime had reloaded the pistol with 4 shells. Rima at that time carried the gun under his coat, and it was not visible. There was no conversation at that time between the bartender Jones and Rima about the gun. Rima showed the pistol to the plain-

tiff, William Welsh, on this occasion, but did not show it to anyone else. A short time thereafter Rima became incensed when he thought he heard something derogatory being said about his wife, and took the gun from his belt and pointed it in the air. At that time, another patron in the tavern, Don Matson, grabbed him from behind. In the struggle that followed, Rima and Matson fell to the floor and the gun discharged, the bullet striking the plaintiff, a bystander, causing the injuries complained of. The evidence is undisputed that Rima was a regular customer of the tavern; and while he had consumed a number of glasses of beer during the times involved herein, the evidence was also undisputed to the effect that he was at no time intoxicated. Also the evidence clearly demonstrated that Rima had never been troublesome or violent while a patron of Sarge's Tavern or otherwise, but on the contrary was a quiet and retiring individual.

We now turn to a consideration of the standard of care imposed upon owners of business establishments, particularly taverns, as revealed by the reported decisions in this state. The applicable rule is well stated in Hughes v. Coniglio, *supra,* in which the court stated: "The modern general rule, summarized in its simplest terms, is that the proprietor of a place of business who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the premises for such a purpose for bodily harm caused to them by the accidental, negligent, or intentionally harmful acts of third persons, if the proprietor by the exercise of reasonable care could have discovered that such acts were being done or were about to be done, and could have protected the members of the public by controlling the conduct of third persons or by giving a warning adequate to enable them to avoid harm. Restatement of the Law, Torts, § 348, p. 953." The above rule was again enunciated and ap-

plied in Fimple v. Archer Ballroom Co., 150 Neb. 681, 35 N. W. 2d 680 (1949), and also in Crane v. Whitcomb, *supra,* which latter case also involved a shooting at a tavern, and an ensuing lawsuit by the victim against the proprietor. The court in that case applied the same rule of law cited above.

After examining the evidence in the light most favorable to plaintiff, and considering such evidence in the light of the standard of care set forth above, we conclude that such evidence was not sufficient to establish the existence of actionable negligence on the part of defendant Zuck, and we reverse the judgment of the lower court.

In his petition, plaintiff alleges separate grounds of negligence against each of the defendants in the lawsuit. It is his allegation and claim that both the defendant Zuck and the defendant Jones were negligent in failing to take any steps to insure the safety of the patrons of the tavern, and particularly the safety of the plaintiff herein under the circumstances, and specifically that they knew or should have known that Rima had a gun in his possession in the tavern on the date and times in question and that the defendant Rima had been served intoxicating liquors on those occasions. Before discussing these allegations, it might be well to point out that the defendant Jones was exonerated from the charge or charges of negligence on his part by verdict of the jury in his favor; and therefore any possible negligence attributable to him could not be imputed to his employer Zuck under the doctrine of respondeat superior. However, Zuck can be held responsible for his own independent negligent acts or omissions. We shall therefore examine the evidence in this regard. Assuming for the purposes of this discussion that Zuck did have knowledge that Rima had a revolver in the tavern on the dates involved herein and also that he had left the gun with

his bartender after the "targeting in" was completed, would the fact that he had knowledge of a gun, particularly an unloaded gun, upon the premises amount to negligence on his part under the facts of this case? We conclude it would not. It must be remembered that there was a perfectly legal and legitimate reason for the gun being on the premises in the first place. It was brought to the premises for the express purpose of having defendant Zuck "target in" the gun. There was no reason at all, as we see it, for Zuck in any way to be perturbed about the presence of the gun on the premises or any reason for him to suspect that Rima would at some subsequent time engage in an altercation in the tavern in which the gun in question might be involved. This is particularly true in view of the undisputed evidence that Rima had never been quarrelsome or in any way obnoxious or obstreperous at prior occasions as a regular patron of the bar. In this connection see Lewis v. Bendinelli, 26 Ohio Misc. 189, 270 N. E. 2d 375 (1970), in which case the court found that the defendant's barmaid in that case could not have reasonably foreseen any danger to the plaintiff from the mere examination of the .22 caliber pistol by customers in the establishment. That case clearly indicates that the mere presence of a gun on the premises of a tavern is not in itself negligence. Nor does the fact that defendant Rima had been drinking beer in the premises on the day in question necessarily indicate negligence. Obviously one of the avowed purposes of a tavern is to sell drinks to its customers. In view of the undisputed evidence that defendant Rima was not intoxicated, we do not feel that the mere fact he was drinking in any way supports a charge of negligence against defendant Zuck, particularly in the absence of a showing that Zuck personally, as distinguished from his bartender, had knowledge of the amount that Rima might have consumed.

There is, however, an even more important reason for reversing the judgment of the lower court. Even assuming that defendant Zuck might have been guilty of negligent acts and omissions in this case, which is a mere assumption for the purpose of the following discussion, we believe it is clear from the evidence that any such negligence could not have been the proximate cause of the shooting involved herein and the resulting injuries to the plaintiff. We think it is clear that any chain of causation which might have otherwise existed was broken by the intervening acts of defendant Rima. The law is well established that a person is not legally responsible for an injury if it would not have resulted but for the interposition of an efficient intervening cause, which he should not have reasonably anticipated. An efficient intervening cause is a new and independent act, itself a proximate cause of an injury, which breaks the causal connection between the original wrong and the injury. The rule in this regard is set out in Colvin v. John Powell & Co., Inc., 163 Neb. 112, 77 N. W. 2d 900 (1956), in which this court held that a party is only answerable for the natural, probable, reasonable, and proximate consequences of his acts; and where some new efficient cause intervenes, not set in motion by him, and not connected with but independent of his acts and not flowing therefrom, and not reasonably in the nature of things to be contemplated or foreseen by him, and produced the injury, it is the dominant cause. Under the undisputed facts of this case, the defendant Jones, the bartender, returned the pistol to the defendant Rima after first checking to make sure that the gun was unloaded. Rima then left the tavern and returned sometime thereafter. However before he returned he reloaded the gun with four shells. He subsequently became engaged in the altercation referred to during which altercation the gun accidently discharged and

the plaintiff was injured. It seems clear that the primary or proximate cause of the accident in this case was not the knowledge of the tavern owner that Rima prior thereto had a gun on the premises, but the acts of the defendant Rima in reloading the gun after leaving the tavern, returning to the tavern, and engaging in the fight which has been described. There was no possible way that defendant Zuck could have foreseen that the above events would transpire; nor was there any possible or reasonable way for him to have prevented what eventually happened. See, for example, Polando v. Vizzini, 58 Ohio Law Abs. 466, 97 N. E. 2d 59 (1949).

In view of the foregoing discussion, we deem it unnecessary to discuss other assignments of error. We conclude that the trial court erred in overruling the motions of defendant Zuck for a directed verdict and for judgment notwithstanding the verdict. Pursuant to the authority of section 25-1315.03, R. R. S. 1943, the judgment of the District Court is reversed and the cause is remanded with directions to enter judgment for the defendant Zuck.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., dissenting.

I respectfully dissent. It seems to me that reasonable minds might differ on both the question of Zuck's negligence and whether his conduct was the proximate cause of the plaintiff's injury. A jury question was therefore presented and in the absence of error it should stand.

The record would support the conclusion that Zuck not only permitted Rima to bring a hand gun (a .38 Smith & Wesson revolver) and ammunition for it into the tavern, but tacitly encouraged him to do so by agreeing to target the weapon for him in the basement of the establishment.

The courts of this country have uniformly recognized

that a gun is a dangerous instrumentality. 56 Am. Jur., Weapons and Firearms, § 3, p. 992; 57 Am. Jur. 2d, Negligence, § 108, p. 459; Naegele v. Dollen, 158 Neb. 373, 63 N. W. 2d 165, 42 A. L. R. 2d 1099. Zuck was an expert and experienced with weapons because of his military service. Anyone who has had experience in the combat arms of the military knows that a hand gun is, from the viewpoint of inflicting accidental injury, considerably more dangerous than many other weapons.

The presence of such a weapon and ammunition on the person of a patron of a drinking establishment enhances the likelihood of an accidental injury while showing or demonstrating the weapon.

The opinion recites that Rima was not intoxicated. This may be true, but the record supports the conclusion that previous to the accident Rima had spent a large portion of the earlier part of the day in the tavern drinking and that he had, between the hours of 9:45 p.m. and about 12:30 a.m. when the accident occurred, consumed as many as five or six beers. It is naive to assume that the amount consumed had no effect upon Rima's judgments or actions. The likelihood of accident is enhanced by the effect of alcohol upon the mind and hand of one who has been drinking most of the day even if he is technically sober.

The jury could conclude: (1) That the gun and ammunition would never have been in the tavern except for the proprietor's tacit encouragement and express permission. (2) That the weapon was a dangerous instrumentality which a patron should not under any circumstances be permitted to bring into a tavern, much less be encouraged to do so. (3) That the proprietor should have anticipated the probability of accidental injury from the presence of the dangerous instrumentality in the hands of a patron even though he may have been technically sober. (4) That Zuck's

acts were negligent and that the accident would not have occurred except for that negligence. (5) That the brief departure of Rima from the tavern is not such an intervening cause as breaks the chain of causation starting with Zuck's initial encouragement.

The majority opinion relies upon cases involving assault by a patron of a business establishment upon another patron. This is not a case of a deliberate shooting but an accidental one. Zuck may not have been required to anticipate an assault by Rima, but the possibility of an accidental injury even while showing the weapon could have been found by the jury to be reasonably foreseeable.

This case should not be decided as a matter of law. It is similar to Naegel v. Dollen, *supra,* where the proprietor of a hardware store permitted the manipulation of a shotgun in his place of business and a patron was injured. We there held that the proprietor was charged with the knowledge that a loaded gun is a dangerous instrumentality and that he is required to exercise the highest degree of care to prevent injury to others.