DOLORES LONDON, APPELLANT, V. JUDITH A. STEWART,
PERSONAL REPRESENTATIVE OF THE ESTATE OF JERRY W.
STEWART, DECEASED, APPELLEE.

376 N.W.2d 553

Filed November 15, 1985.   No. 84-434.

George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, for appellant.

David A. Domina of Domina & Gerrard, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Following a jury trial of a case involving an October 25, 1981, automobile accident, a verdict and judgment were

entered in favor of the defendant, Judith A. Stewart. Plaintiff, Dolores London, has appealed, alleging as errors the giving of certain instructions, the reception of evidence of a compromise settlement between plaintiff and a former defendant, Anthony G. Siecke, and the trial court's failure to direct a verdict for the plaintiff on the issue of liability. We reverse and remand for a new trial.

Plaintiff was a passenger in an automobile being driven at approximately 1:30 a.m. in a westerly direction by Jerry W. Stewart, defendant Judith Stewart's decedent. That automobile collided with one being driven in an easterly direction by Siecke. The road on which the accident occurred had an asphalt surface which was measured to be 23 feet 7 inches in width.

There was testimony that the Siecke automobile did not have its headlights on. Mrs. Siecke testified that the headlights were on at all times. She also said that her husband was operating their automobile in the right-hand lane of traffic and that the Stewart automobile headed right toward them and was being driven on the wrong side of the road. However, Mrs. Stewart testified that her husband was driving on his own side of the road. Both Stewart and Siecke had been drinking.

Identifiable gouge marks and skid marks would tend to indicate that both vehicles were pretty much in the south, or eastbound, lane of traffic. Immediately after the accident, the Siecke automobile was located in the south lane of traffic, headed east, and the Stewart vehicle was in the north lane, facing southeast.

Although plaintiff named both Siecke and Stewart, by his personal representative, as defendants, a settlement was made with Siecke and the case was dismissed as to him.

By instruction No. 11 the jury was told that Stewart had alleged that the negligence of Siecke intervened between any negligence of Stewart and the injury to plaintiff and that if the jury so found that Siecke was negligent and that such negligence was an intervening cause and was the proximate cause of plaintiff's injuries, then the jury must find for the defendant Stewart. Instruction No. 17, defining intervening cause, was also given by the court. Plaintiff objected to both instructions.

Instruction No. 17 was taken from NJI 3.43 and reads as follows:

An efficient intervening cause is a new and independent act, itself a proximate cause of an injury, which breaks the causal connection between the original wrong and the injury. A person is not legally responsible for an injury if it would not have resulted but for the interposition of an efficient intervening cause, which he should not have reasonably anticipated.

If an action is of a character which, according to the usual experience of mankind, is liable to invite, induce, or set into operation the intervention of some subsequent cause, the subsequent cause is not an efficient intervening cause.

This court has frequently dealt with what constitutes "an efficient intervening cause." In *Shelton v. Board of Regents*, 211 Neb. 820, 825, 320 N.W.2d 748, 752 (1982), this court stated:

An efficient intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury. *Coyle v. Stopak, supra*. In *Coyle, supra* at 606-07, 86 N.W.2d at 768, we further said: " 'The causal connection is broken if between the defendant's negligent act and the plaintiff's injury "there has intervened the negligence of a third person who had full control of the situation and whose negligence was such as the defendant was not bound to anticipate and could not be said to have contemplated, which later negligence resulted directly in the injury to the plaintiff." ' "

See, also, *Welsh v. Zuck*, 192 Neb. 1, 218 N.W.2d 236 (1974); *Lock v. Packard Flying Service, Inc.*, 185 Neb. 71, 173 N.W.2d 516 (1970).

It is the defendant's position that the alleged negligence of Stewart occurred first and merely created a condition upon which the negligence of the other driver, Siecke, caused the injury. Emphasis is given to the positions of the Restatement (Second) of Torts § 441(1) (1965) and Prosser and Keeton on the Law of Torts, *Proximate Cause* § 44 (5th ed. 1984). Both authorities indicate that an intervening cause occurs after the initial negligence of the actor. "An intervening cause is one which comes into active operation in producing the result *after* the negligence of the defendant. 'Intervening' is used in a time

sense; it refers to latter events." Prosser and Keeton, *supra* at 301. "An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." The Restatement, *supra* at 465.

These statements are correct as far as they go. However, both definitions suggest that the intervening force is one which actively operates to produce the harm *after* the negligent act of the defendant has been committed. If the negligence of the defendant is continuing in nature, actions of both parties constitute concurring negligence. The rule is stated in Restatement (Second) of Torts § 439 at 464 (1965):

> If the effects of the actor's negligent conduct *actively* and *continuously* operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious, or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability.

(Emphasis supplied.)

Here, there was evidence which would support a conclusion that Stewart was on the wrong side of the road right up to the time of impact. If this was true, he was guilty of active and continuous negligence which was either the proximate or a proximately contributing cause of the accident.

The giving of an instruction on intervening cause was not appropriate in this instance. It is the duty of the trial court to instruct the jury only on issues which are pleaded and which find support in the evidence. *Maloney v. Kaminski*, 220 Neb. 55, 368 N.W.2d 447 (1985). That the giving of such instruction was prejudicial to the rights of the plaintiff is apparent.

If the separate and independent acts of negligence by different persons combine to produce a single injury, each participant is liable for the damage, although one of them alone would not have caused the result. *Libbey-Owens Ford Glass Co. v. L & M Paper Co.*, 189 Neb. 792, 205 N.W.2d 523 (1973).

As to the issue relating to evidence of a compromise settlement, the record discloses that on April 9, 1984, during the course of the trial, Mrs. Siecke, in testifying as a witness for the plaintiff, said that at the time of the accident the automobile being driven by her husband was on the right side of the road.

On cross-examination she admitted that in a deposition given on July 23, 1982, she had testified that she did not know which side of the road they were on. She also conceded that in a deposition given on March 12, 1984, she stated that they were more on the right side of the road than on the other side, although it was disclosed on further direct examination that she knew they were on the right side of the roadway.

It is quite apparent that the foregoing cross-examination was a proper exercise of the right to impeach the testimony of a witness. However, defendant's counsel was permitted, over objection and on recross-examination, to inquire of Mrs. Siecke if it was not true that at the time of her March 12 deposition her husband was also a defendant in this lawsuit. She, of course, admitted that such was the case. She also admitted that at the time of the earlier testimony she was suing the estate of Jerry Stewart. The attempt of plaintiff's counsel to show the result of that last litigation was denied by the trial court.

It seemed to be the position of defendant's counsel and of the trial court that the above testimony of the role of Mrs. Siecke's husband in the lawsuit was properly admitted under the provisions of Neb. Rev. Stat. § 27-408 (Reissue 1979), which provides in pertinent part as follows: "Evidence of . . . compromising . . . a claim which was disputed . . . is not admissible to prove liability . . . . This rule . . . does not require exclusion when . . . offered for another purpose, such as proving bias or prejudice of a witness . . . ."

Assuming that such evidence constitutes evidence of compromising a claim involving the witness, it is difficult to see that such testimony could be the result of bias arising out of such compromise. We agree with the plaintiff that the questions asked of Mrs. Siecke were clearly intended to suggest that her husband had paid Dolores London; therefore, it is assumed, the jury would not want to compensate plaintiff twice. However, there must be something about the settlement of the claim against the husband of the witness that might influence her to testify falsely.

It is conceivable that at a time when the suit against her husband was still active, Mrs. Siecke might want to testify favorably to him, i.e., that he was on his own side of the road at

all times. Contrariwise, once his liability was settled, other than the desire to tell the truth, she would have no reason to care on which side of the road he was, and an answer that she did not know would not be unexpected. In the present case the sequence was just the opposite.

We see no logical connection between the facts testified to by Mrs. Siecke and the status of her husband's lawsuit. We see no relevance to the testimony. At best, any possible relevance was outweighed by the danger of *unfair* prejudice, confusion, or misleading of the jury. Neb. Rev. Stat. § 27-403 (Reissue 1979). Plaintiff's objection should have been sustained.

From our review of the record, the evidence was conflicting as to the negligence of the defendant and the proximate cause of the accident. As such, that issue must be submitted to the jury. *Fangmeyer v. Reinwald*, 200 Neb. 120, 263 N.W.2d 428 (1978).

The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

KRIVOSHA, C.J., concurring in the result.

I concur in the result reached by the majority in this case. I write separately, however, because I do not agree with the majority's conclusions concerning the evidence of the compromise settlement. In my view the evidence of a settlement in this case was properly admitted into evidence under the provisions of Neb. Rev. Stat. § 27-408 (Reissue 1979). The majority suggests that evidence of the settlement in this case could not show any bias on the part of the witness. The majority further suggests that once Mr. Siecke's liability was settled, Mrs. Siecke would have no desire to tell anything but the truth. Section 27-408, however, contemplates that there may be situations where parties settle on condition that the defendant with whom the settlement is made will render favorable testimony on behalf of the plaintiff. It may very well be that a plaintiff is willing to accept a lesser settlement if the defendant, once freed of liability, will agree to testify favorably for the plaintiff. Such a situation does constitute a bias which may be disclosed under § 27-408. In 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 408[05] at 408-27 (1985), the noted authors observe, "The other general exception to Rule 408's

exclusionary force is proof of bias or prejudice of a witness. Need for the evidence is most common when the witness has compromised his claims against a litigant in the suit being tried."

In the case of *John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632 (3d Cir. 1977), a similar situation was presented. In May of 1969 John McShain, Inc., purchased from Wings, Inc., for $282,136 an aircraft manufactured by Cessna Aircraft Co. In December of 1969 the main landing gear of the plane collapsed as the plane alighted on the runway in Baltimore. After notifying Cessna, McShain had the aircraft repaired by Butler Aviation-Friendship, Inc. The plane was then returned to McShain. After 5 hours of further flight, the plane's landing gear once more gave way upon touchdown. McShain filed a suit against Cessna, and Cessna joined Butler as a third-party defendant. When a witness for McShain, who was an employee of Butler's sister corporation, testified, Cessna sought to introduce a release executed between McShain and Butler for the purpose of impeaching the witness' testimony. In upholding the trial court's ruling, the court of appeals said at 635:

> We believe that Judge McGlynn did not commit reversible error in admitting the agreement and in allowing comments upon it. The fact that a sister corporation of Harmon's employer had been released from liability in exchange for Harmon's testimony cast doubt upon Harmon's impartiality. Thus, as counsel for McShain appeared to contend at oral argument, McShain's claim is in reality that the potential prejudice from the admission of the agreement outweighed the agreement's probative value.

The situation in the instant case is even stronger. I believe that the district court was correct in permitting the evidence of the compromise to be presented to the jury for the jury's consideration under the provisions of § 27-408. While there is always prejudice resulting from such testimony, this is recognized as one of the exceptions. "In permitting cross-examination on such subjects, Rule 408 has determined, in effect, that the need to evaluate a witness's credibility normally outweighs the policy of encouraging compromises." 2

J. Weinstein & M. Berger, *supra* at 408-28. While I concur in the result reached by the majority in this case, I would not have found the evidence of the compromise to be error.