THOMAS HARVEY, APPELLANT, v. ROBERT VAN AELSTYN AND CARLENA WARREN, DOING BUSINESS AS THE MILL BAR AND LOUNGE, APPELLEES.

319 N.W.2d 725

Filed May 21, 1982. No. 44001.

Thomas M. Sonntag of Peetz, Peetz & Sonntag, for appellant.

Leland K. Kovarik of Holtorf, Kovarik, Nuttleman & Ellison, P.C., for appellee Warren.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

This action for damages for personal injuries was brought by the plaintiff, Thomas Harvey, in the District Court for Cheyenne County, Nebraska, alleging two causes of action. The first is against the defendant Robert Van Aelstyn for an assault and battery which occurred on June 17, 1979, in a tavern in Sidney, Nebraska, known as The Mill. The second cause is against the defendant Carlena Warren, the owner and operator of The Mill, for alleged negligence in failing to prevent the assault. The trial court held that Van Aelstyn was liable as a matter of law. It granted the defendant Warren's motion for a directed verdict. The jury returned a verdict against Van Aelstyn for $24,000. Van Aelstyn has not appealed.

The plaintiff appeals from the order directing the verdict for the defendant Warren. The issue on ap-

peal is whether the evidence required the issues of the defendant Warren's alleged negligence and its relation to the assault as proximate cause to be submitted to the jury.

The plaintiff alleged that Warren was negligent in the following ways: "a. In permitting the Defendant, Robert Van Aelstyn, to enter into and remain upon the premises of said Defendant, The Mill, when said Defendant, its agents, servants, workmen or employees knew or had reason to know that on prior occasion the Defendant, Robert Van Aelstyn, had become obstreperous, boisterous and prone to violent action toward patrons of the Mill;

"b. In failing to aid or attempt to aid Plaintiff while he was being assaulted, battered and violently attacked by the Defendant, Robert Van Aelstyn;

"c. In failing to exercise reasonable care and caution in protecting Plaintiff from the assault, beating and violent action of the Defendant, Robert Van Aelstyn;

"d. In failing to afford proper protection to its guests and patrons;

"e. In failing to maintain order on said premises;

"f. In failing to employ security personnel for the protection of Plaintiff and other guests and patrons;

"g. In failing to report the incident described herein to law enforcement authorities;

"h. In failing to report similar incidents which have occurred at the Mill to law enforcement authorities"—one or more of which alleged acts were a proximate cause of plaintiff's injuries.

There is no dispute as to the facts of the assault which occurred on June 17, 1979. The plaintiff was a regular patron of The Mill. Following a softball game in which he participated, he with others came into the bar, sat at a booth, and began to drink beer. It was a Sunday and only wine and beer were being sold. About 10 patrons were present, including the plaintiff. The defendant Warren was tending bar.

No other employees of the bar were present. Later, plaintiff's former wife, Lina Harvey, entered the bar. At sometime during the evening she and a female friend sat down at the booth at which the plaintiff was seated. Shortly thereafter, the plaintiff, apparently made uncomfortable by Lina's presence, left the booth and went to the bar. Lina and a female friend persuaded the plaintiff to return to the booth. Thereafter, at the suggestion of a friend, the plaintiff asked Lina to dance. The two began to dance in the area provided for dancing, which was separated from the bar by the booths and restrooms. One other couple was on the dance floor. One of the dancers was Alan Anderson. At that time the defendant Van Aelstyn, who had not previously been present, entered the east door of the tavern, strode rapidly to the dance floor, tossed his coat at Anderson, grabbed Lina by the shoulders, and shoved her aside with such force as to propel her to the floor. He immediately struck plaintiff in the face, knocking him to the floor, unconscious. He then kicked and stomped on him with his feet. Immediately, Anderson, one Darwin Glassburn, an off-duty, part-time employee of the tavern who was seated at the bar, and other male patrons restrained Van Aelstyn and removed him from the tavern. Plaintiff suffered serious injuries and was taken to the hospital immediately by friends.

Plaintiff was unaware of Van Aelstyn's presence in the tavern until Lina was knocked to the floor. He then saw Van Aelstyn's fist coming toward him and remembered nothing else until regaining consciousness in the hospital. It is clear that he had no opportunity to defend himself. Glassburn testified that less than a minute elapsed from the time Van Aelstyn entered the east door of the tavern until the assault was complete. Anderson testified that he was not aware of Van Aelstyn's presence until the coat hit him. He did not know whom Van Aelstyn was

going to attack. Anderson pushed the girl with whom he was dancing away and shouted a warning. All the witnesses agree that Van Aelstyn said nothing before the assault. Glassburn, who saw him enter, stated Van Aelstyn had a peculiar look in his eye.

At the time the assault occurred, and for 5 to 6 months earlier, Van Aelstyn was living with Lina Harvey and the three children of the plaintiff and Lina at Lina's place of residence. Van Aelstyn entered the bar because he was looking for Lina and had earlier tried to find her at the "Eagles." Harvey was acquainted with Van Aelstyn and had visited his own children at the home where Van Aelstyn and Lina lived when both Van Aelstyn and Lina were present. He stated he had no reason to believe Van Aelstyn would hit him and that there had been no "bad blood" between them. Van Aelstyn's motive for the attack was disclosed by his own statement while stomping on Harvey, when he said, in effect, "stay away from my girl or I'll kill you." The defendant Warren saw Van Aelstyn enter the tavern but did not see the start of the assault. She saw Van Aelstyn leave but does not know how Harvey was removed from the premises. By the time she reached the "archway," everything was over.

In the case of *Hughes v. Coniglio,* 147 Neb. 829, 25 N.W.2d 405 (1946), this court adopted the rule of the Restatement of Torts § 348 (1934), now Restatement (Second) of Torts § 344 (1965), and summarized it in the following language: "The modern general rule, summarized in its simplest terms, is that the proprietor of a place of business who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the premises for such a purpose for bodily harm caused to them by the accidental, negligent, or intentionally harmful acts of third persons, if the proprietor by the exercise of reasonable care could have discov-

ered that such acts were being done or were about to be done, and could have protected the members of the public by controlling the conduct of the third persons or by giving a warning adequate to enable them to avoid harm. Restatement of the Law, Torts, § 348, p. 953." *Id.* at 833, 25 N.W.2d at 408. In *Coniglio* the plaintiff, a patron of a restaurant, was injured when a fight occurred between two patrons of the establishment. In that case we noted that the place of business was not one where fights had generally occurred or for any reason were likely to occur, that neither defendant had any notice that the fighting patrons had quarrelsome, violent, or disorderly propensities, or were liable for any reason to assault each other or injure patrons. We also said: "It is apparent from the evidence that both the altercation and resulting injury to plaintiff all happened suddenly and unexpectedly, without any warning, and by the exercise of reasonable care could not either have been discovered or prevented by defendant." *Id.* at 832, 25 N.W.2d at 408.

We have reiterated the general rule in subsequent cases. In *Fimple v. Archer Ballroom Co.,* 150 Neb. 681, 35 N.W.2d 680 (1949), the altercation and assault occurred in a dancehall equipped with booths at which the proprietor sold "setups," i.e., ice, glasses, and mix, which the patrons were permitted to mix with alcohol and consume on the premises. In that case the plaintiff was seated in a booth. In the adjacent booth were four intoxicated young men. As time passed these young men became more intoxicated and boisterous in their conduct and language, breaking glasses and on one occasion throwing a whiskey bottle. All of this went on for about an hour and a half. As the plaintiff got up to leave, one of the young men tossed a bottle and struck the plaintiff on the right side of the nose, inflicting serious injury. We held this evidence made a submissible case of the proprietor's negligence under the general

rule, but reversed for errors in instructions.

In *Crane v. Whitcomb,* 160 Neb. 527, 70 N.W.2d 496 (1955), the plaintiff Crane was shot outside the tavern owned and operated by the defendant. Her husband, a codefendant, made the assault following an altercation which began in the tavern. The court submitted the case to the jury on the issue of liability of both defendants, and the jury returned a verdict against both. The defendant husband did not appeal. This court reversed the verdict as to the operator-owner, relying upon the general rule we have earlier stated and pointing out that there was no evidence the owner knew or permitted the husband to have the weapon with him on the premises. This court recited the following evidence: "Defendant was up in the tavern nearly all evening from 8 or 9 p.m., working and visiting with customers. There is evidence that she was back of the bar when Whitcomb went downstairs [to obtain the gun]. She did not see him go to the basement. She took an empty case to the garage at the back and when she returned the place was empty and she wondered why. She heard no warning that people should leave, did not know that Whitcomb had the gun, and heard no shot. She looked up just as he went out the door and when she started toward the door plaintiff came inside the tavern again.

"It will be observed from the foregoing that defendant was not guilty of any negligence proximately causing plaintiff's injuries . . . ." *Id.* at 537, 70 N.W.2d at 502.

We again cited the general rule in *Welsh v. Zuck,* 192 Neb. 1, 218 N.W.2d 236 (1974). This case involved the accidental shooting of a patron in a tavern operated by the defendant Zuck, by another patron, Rima. The defendant proprietor had a pistol target-shooting gallery in the basement of the tavern. He permitted Rima, his codefendant, to use the gallery for the purpose of "targeting" his per-

sonal handgun. Two days before the shooting Zuck and Rima targeted the pistol. Zuck then checked to see that it was unloaded and handed it back to Rima. Rima, when he went upstairs to the bar, handed it to the bartender and asked him to put it behind the bar until he returned later. This the bartender did. There was evidence that Zuck saw Rima give the gun to the bartender, although this was disputed. On the day of the shooting Rima returned to the tavern and asked the bartender for the gun, and it was given to him. Rima then left the tavern and during that time put four shells in the weapon. He returned about 45 minutes later. He showed the gun to the plaintiff Welsh, a patron. About that time Rima thought he heard someone say something disparaging about his wife. He raised the pistol and pointed it in the air. Another patron, fearing violence, sought to disarm him and in the course of the struggle they fell to the floor, the weapon was discharged, and the plaintiff Welsh was wounded. The jury returned a verdict against both Zuck and Rima. This court on appeal (one judge dissenting) set aside the verdict against Zuck, saying, after reciting the general rule we have earlier quoted: "After examining the evidence in the light most favorable to plaintiff, and considering such evidence in the light of the standard of care set forth above, we conclude that such evidence was not sufficient to establish the existence of actionable negligence on the part of defendant Zuck, and we reverse the judgment of the lower court." *Id.* at 6, 218 N.W.2d at 239.

Restatement (Second) of Torts § 344, Comment d. at 225 (1965), in discussing the standard of reasonable care, says in part: "A . . . possessor of land who holds it open to the public for entry for his business purposes is not an insurer of the safety of such visitors against the acts of third persons, or the acts of animals. He is, however, under a duty to exercise reasonable care to give them protection. In

many cases a warning is sufficient care if the possessor reasonably believes that it will be enough to enable the visitor to avoid the harm, or protect himself against it. There are, however, many situations in which the possessor cannot reasonably assume that a warning will be sufficient. He is then required to exercise reasonable care to use such means of protection as are available, or to provide such means in advance because of the *likelihood* that third persons . . . may conduct themselves in a manner which will endanger the safety of the visitor." (Emphasis supplied.)

It is clear from the foregoing evidence that the defendant Warren could not at the time the assault occurred have done anything to restrain Van Aelstyn. No reasonable opportunity to do so existed. Neither could she reasonably be expected to have given a warning unless she is to be charged with the unreasonable obligation of being able to discern Van Aelstyn's intention at the moment he entered the tavern. The evidence indicated that Van Aelstyn had not been in the tavern for a year or more prior to this incident.

The plaintiff presented the following evidence to show that Warren had notice of Van Aelstyn's assaultive disposition, from which arose her duty to warn and restrain Van Aelstyn and protect the plaintiff. The evidence shows that on one occasion a year or more prior to the present assault Van Aelstyn, while in the tavern, slapped or struck another patron by the name of Bayne. No details of this incident are shown by the evidence. On another occasion, apparently prior to the Bayne incident, Van Aelstyn, while a patron of The Mill, left the building and walked across the street to slap a young man who had purchased a soft drink at the bar and then went across the street to sit at the curb to drink his purchase. The evidence shows Warren witnessed the Bayne incident and was later told by Glassburn, who

apparently was the employee on duty at the time, of the other incident involving Van Aelstyn.

The plaintiff also introduced evidence of prior occurrences in or near the tavern, which plaintiff argues, when taken together with Warren's knowledge of Van Aelstyn's disposition, gave rise to a duty at all times to employ security personnel for the protection of patrons, including the plaintiff. A detective lieutenant of the Sidney Police Department testified at trial, which took place on November 20, 1980, that he had occasion to investigate "assaults, disturbances or fights," about 10 in all, which occurred at The Mill since January 1, 1975. He described only three of these incidents. The first occurred on October 3, 1975. In that instance one patron, a Mr. Davis, while in the restroom of The Mill, vomited, dirtying the shoes of another patron, a Mr. Benzel, who was also using the restroom. Benzel pushed Davis away, and the latter pulled a knife and stabbed the former. Mrs. Warren was on duty at the bar on this occasion.

The second incident occurred on December 8, 1975. On that occasion one patron struck another several times with a beer bottle. This incident was reported to the police immediately after the incident by the barmaid who could not get to the telephone during the altercation because the participating parties blocked the route to the telephone. Warren was present on this occasion. No other details are shown.

The third incident occurred on July 29, 1978, not in the bar, but on the steps at the west entry to the building. These steps are adjacent to the public sidewalk. The person assaulted was about to enter the building when he was met by another person who attacked him with his fists. Whether the person who committed the assault was a patron of the bar is not disclosed by the evidence.

The assault on Harvey by Van Aelstyn was re-

ported to the police department by a third party several days after the incident.

Under the general rule we have earlier cited and as we have applied it in the four cases from which we have quoted, it is clear that the possessor of the premises is not bound to anticipate the unforeseeable independent acts of third persons, and it is only when such acts can reasonably be anticipated that the possessor has the duty to take some precautionary measures to protect against such independent acts. The following cases from other jurisdictions also support this position. *Moore v. Yearwood,* 24 Ill. App. 2d 248, 164 N.E.2d 215 (1960) (assault with beer bottle by one patron against another as the latter was being escorted from the bar by the bartender because he was intoxicated and arguing); *Evanish v. V. F. W. Post No. 2717,* 269 Minn. 209, 130 N.W.2d 331 (1964) (defendant bar operator, who was sponsoring a convention taking place on part of the bar premises, furnished firecrackers for use outside the bar and a person outside the bar entered and threw a firecracker, injuring a patron); *Pierce v. Lopez,* 16 Ariz. App. 54, 490 P.2d 1182 (1971) (assault with a pool cue by one patron against another arising out of an altercation stemming from the former accidentally spilling beer on the latter). In each of these cases the court, applying the general rule, held that the operator was, as a matter of law, not guilty of negligence which was the proximate cause of the plaintiff's injuries.

We held as a matter of law that the defendant Warren was not bound to anticipate the unforeseen entry of Van Aelstyn on the premises and the totally unexpected subsequent assault upon the plaintiff when no warning of any kind had been given and the motive for the assault could have occurred only after Van Aelstyn observed Lina dancing with plaintiff. It would be pure speculation to assume that the presence of a security person could have prevented

the assault, when the evidence showed that Anderson, who was within an arm's length of Van Aelstyn, and others near at hand could not react until after the plaintiff was knocked to the floor. The action of the District Court was correct and is affirmed.

AFFIRMED.