RICHARD D. MYERS, TRUSTEE IN BANKRUPTCY, SUBSTITUTED FOR
DAVID SIGNOR AND CAROLYN SIGNOR, BANKRUPTS, APPELLANT, V.
NATIONAL TRANSPORTATION, INC., A NEBRASKA CORPORATION,
AND LANNY N. FAUSS, APPELLEES.
393 N.W.2d 43

Filed August 29, 1986.   No. 85-317.

George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, for
Signors.

Daniel P. Chesire of Kennedy, Holland, DeLacy & Svoboda,
for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This is an appeal from an order of the district court for Sarpy
County which granted defendants' motion for a directed
verdict and dismissed Signors' suit for breach of contract. We
affirm.

The plaintiff David Signor began working for the defendant
National Transportation, Inc., as a truckdriver in March of
1972. National is a Nebraska corporation with a certificate of
operating authority as a truck line. At the time of Signor's
employment, Lanny Fauss, a high school acquaintance, was
part owner and president of the company. In addition, Fauss
was the owner and president of Cargo Leasing Corporation, a
company that purchased equipment and leased it to National.
In May of 1976 Cargo was absorbed by National, and Fauss
became the sole stockholder of National. The parties stipulated
that the two companies would be treated as one and the same
for purposes of this litigation.

In March of 1973 Signor approached Fauss about becoming an owner-operator of a truck. The evidence is in dispute as to whether Signor had been fired from his job prior to this. In any event, with Fauss' approval Signor went to Hastings Motor Truck Co. and arranged to purchase a 1968 Kenworth truck. He was unable to provide enough downpayment, so Fauss guaranteed a loan from the Bank of Norfolk for $1,500. In addition, Fauss signed the truck purchase agreement, through Cargo Leasing, and the vehicle was purchased and titled in the name of Cargo.

Immediately thereafter, Signor contracted to lease the truck exclusively to National for a period of 1 year. Signor hauled loads for National, and in return received 32 cents per mile as compensation. National deducted from Signor's gross pay the cost of licenses, taxes, insurance, workers' compensation, advances made to Signor prior to his trips, and fuel expenses which were charged to National. In addition, National paid Cargo for the truck payments, and Cargo in turn paid Hastings Motors' assignee.

Signor experienced numerous mechanical problems with the 1968 truck and, at one point, was forced to obtain another loan in order to pay for repairs. Prior to March of 1974, the truck suffered a major breakdown, requiring expensive repairs. Signor discussed with Fauss the possibility of acquiring a different truck.

As a result, Signor made arrangements to trade in the 1968 vehicle for a 1974 Diamond Reo truck. The purchase agreement was again signed by Signor and Lanny Fauss for Cargo Leasing, and the purchaser was listed as Cargo. In addition, Fauss had Mr. and Mrs. Signor execute a security agreement which provided for Cargo to repossess the truck in the case of default, removal of the chattel, or failure to keep it insured. Signor also contracted to lease the Diamond Reo exclusively to National for a period of 1 year, commencing March of 1974. At the time of the purchase of this second vehicle, Signor was indebted to National in the amount of $3,043.85, as his expenses had exceeded his revenues during the term of the first lease.

Signor took dispatch from National and was paid 37 cents a

loaded mile and 30 cents an unloaded mile. Signor conducted himself just as he had when driving the previous vehicles. He received advances from National prior to his trips, charged fuel at filling stations where National had an account, and took advances from other companies when National leased out his services. National accounted to Signor with settlement sheets for each run that he went on. The company deducted his expenses, including all advances, and usually applied any credit balance on his account.

The evidence shows that National made two payments to Cargo on the second truck, and thereafter failed to pay any more. During this time, Signor remained indebted to National, never owing less than $2,400, and at one point owing $6,300. In August of 1974 Signor returned from a run on the 24th. He testified that he called in to National for more work from the 25th to the 30th, but no loads were available.

On August 30 Fauss and another man came to Signor's house to repossess the truck. Signor was at the home of a friend, where he was contacted by his wife. After seeing Fauss confer with the police, Signor got in the truck and took it to a friend's house in another county. Fauss and the police pursued him, and when they reached the county line they contacted the Stanton County sheriff, who assisted them in reclaiming the vehicle.

The Signors filed this suit in August of 1979, alleging breach of contract against both National and Cargo. Initially, the trial judge sustained the motion of the defense for a summary judgment based on the statute of limitations. This court reversed that ruling in *Signor v. National Transp., Inc.*, 217 Neb. 667, 351 N.W.2d 58 (1984). On remand, a trial was held, and at the end of all the evidence the court sustained the defendants' motion for a directed verdict.

Prior to the commencement of this litigation, and in 1974, both of the Signors had filed bankruptcy proceedings and had received discharges. While the trial of the present action was pending, the Signors filed bankruptcy proceedings for a second time, in 1982, which were still active at the time of trial. It was for that reason that Richard D. Myers was substituted, following conclusion of the trial, as a party to this action. However, no further reference to the trustee is necessary in this

opinion.

The assignments of error are that (1) the judgment is contrary to law, (2) the judgment is contrary to the evidence, (3) the court erred in sustaining defendants' motion for a directed verdict, (4) the court erred in dismissing Signors' petition, and (5) the court erred in refusing to admit into evidence interrogatory answers given by National.

We first address the threshold jurisdictional issue of whether the Signors were the real parties in interest at the time this suit was filed in August of 1979. The trial judge indicated that because Signors' claim against National was scheduled as a contingent claim in their 1974 bankruptcy and was not abandoned with court approval, the trial court had no jurisdiction. This issue is governed by bankruptcy rule 608, which was in effect at the time of Signors' discharge in 1975. It reads:

> The court may, on application or on its own initiative and after hearing on such notice as it may direct, approve the abandonment of any property and, without reopening the case, may direct the abandonment of any property of inconsequential value discovered after a case is closed. *If a case is closed without administration of property of the estate that has been scheduled, the property shall be deemed to have been abandoned with the approval of the court, and on request the court may, without reopening the case, enter an order approving the abandonment.*

(Emphasis supplied.) See 11 U.S.C. app. rule 608 (1982).

An examination of the Signors' 1974 bankruptcy shows that the claim was indeed scheduled, but the record is silent as to any disposition of the property. This appears to be the precise circumstance contemplated by rule 608. The scheduled claim is thus deemed to have been abandoned with court approval. Further, the Signors' previous trustee in bankruptcy prepared for the court an affidavit which stated that all assets of the bankrupts' estate were exempted, abandoned, or disclaimed, which "resulted in returning said assets to the bankrupts subject to any valid liens or encumbrances thereon." Resultingly, the claim became the property of the Signors, and they were the real parties in interest at the time of filing.

The second, third, and fourth assignments of error essentially argue that the trial court erred by directing a verdict on behalf of the defendants. In considering a motion for a directed verdict,

> the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences which can reasonably be deduced therefrom.

*Farm Bureau Life Ins. Co. v. Luebbe*, 218 Neb. 694, 697, 358 N.W.2d 754, 757 (1984).

It is first necessary to frame the issues by examining the pleadings. Signors' amended petition alleges the various truck purchase agreements, the security agreements, and the lease agreements previously mentioned. It then alleges that National expressly and impliedly covenanted "to furnish plaintiffs with sufficient hauling to pay for the truck, fuel, oil, maintenance, repairs, taxes, insurance, licenses and road expenses" and that "plaintiffs should reasonably have been able to earn $15,000.00 per year as wages and profits from the lease of said truck, at a minimum." The Signors then allege that National breached its agreement by seizing Signors' truck and failing to provide Signors with hauling as promised; failed to account to Signors for sums earned and withheld from amounts earned by Signors for licenses, taxes, permits, and insurance; and failed to account to Signors for use of the truck by National when National seized the truck and incorporated it into its own fleet.

National, by its answer, admitted the written agreements as alleged; denied any oral agreements; denied that it ever promised to provide insurance, licenses, or tags for Signor; and denied that there were any promises or covenants to furnish sufficient hauling to pay the specified expenses and profits. It further alleged that Signor refused to work according to the terms of the various contracts and that Signor breached the agreements by making unauthorized charges, failing to take dispatches, hauling for other carriers, and failing to properly service the truck.

Both lease agreements contained identical language with

regard to Signor's obligation to haul and National's duty to furnish business to Signor. Those sections provide as follows:

> The CONTRACTOR [Signor] hereby agrees to furnish to the CARRIER [National] continuously and exclusively for a period of one year from the date hereof, the motor vehicle equipment which is more particularly described in Appendix A and by this reference made a part hereof, and the labor to perform all work necessary for the transportation of such commodities as may be provided by the CARRIER for transportation by the CONTRACTOR from time to time. CARRIER agrees to exercise every reasonable effort to furnish to CONTRACTOR for transportation as much traffic as is reasonably possible during the period of this contract. This is not to be construed as an agreement by the CARRIER to furnish any specific number of pounds of commodities for transportation by the CONTRACTOR at any particular time, or at any particular place.

Dismissing from consideration the rather obvious conclusion that the written contract is in no way ambiguous to the extent that parol evidence is admissible to explain the plain language of the contract, there is no evidence whatsoever which would support Signors' allegation. Not only does National's agreement to "exercise every reasonable effort to furnish" transportation fall far short of guaranteeing Signor sufficient haulage to pay all expenses plus a $15,000-per-annum profit, the language of the contract specifically renounces any such interpretation.

Finally, Signors allege that National breached its agreement by seizing Signors' truck. National seized the truck pursuant to the security agreement executed by the parties. Paragraph 6 of that agreement provides:

> In the case of a failure to pay the contract price [by Signors] or any installment thereof . . . the secured party [National] . . . shall be at liberty from that time, and he [sic] is authorized to enter into and upon any place or places where the chattel property may then be, and to retake the same and cancel this agreement, and to retain all payments made . . . .

There is no dispute that the Signors were in default on their security agreement.

We conclude that the record discloses no credible evidence on which a jury could properly proceed to find a verdict for the Signors. The trial court was correct in directing a verdict in favor of the defendants.

However, before finally disposing of this case we must address Signors' complaint that the trial court erred in excluding the offer into evidence of answers to interrogatories given by National's president, Lanny Fauss. Signors insisted that such answers would have impeached testimony earlier given by Fauss. However, on cross-examination Fauss acknowledged the erroneous testimony which the impeachment evidence would have confirmed. There was no abuse of discretion in the trial court's ruling regarding these offers of proof. *Tank v. Peterson*, 219 Neb. 438, 363 N.W.2d 530 (1985).

The judgment of the district court is affirmed.

AFFIRMED.