NANCY D. VICE, APPELLANT, V. DARM CORPORATION, A
NEBRASKA CORPORATION, APPELLEE.
395 N.W.2d 524

Filed October 31, 1986.    No. 85-456.

Rodney J. Rehm of Rehm & Bartling, for appellant.

Steven E. Guenzel of Barlow, Johnson, DeMars & Flodman, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

2

CAPORALE, J.

Plaintiff-appellant, Nancy D. Vice, alleges that defendant-appellee, Darm Corporation, negligently permitted her to be injured during a fight at its bar. At the close of all the evidence, the district court sustained defendant's motion for a directed verdict and entered a judgment dismissing plaintiff's petition. Plaintiff's assignments of error challenge the correctness of the district court's judgment, contending that there existed questions of fact for the jury to decide. We affirm.

On November 22, 1980, plaintiff watched a football game on television with friends in her apartment. After the game they went to Oscar's, a bar in Lincoln owned by defendant. In the crowded bar plaintiff's roommate, Mary Jo O'Grady, directed plaintiff's attention to Rhonda Cudney, who had watched the game with plaintiff. Rhonda Cudney had Kelly McCarthy, who was in tears, pushed up against the wall. Although the evidence is vague, it appears Kelly McCarthy had blamed Rhonda Cudney for throwing a beer at her, and Rhonda Cudney may have slapped Kelly McCarthy.

Donald Arena, president and secretary of the defendant corporation and full-time manager of Oscar's, heard the two women arguing and went to see what the problem was. He testified that the women indicated there was no problem, only a misunderstanding, and that they apologized to him. Plaintiff went over to talk to Rhonda Cudney to see if she was all right, after which the three women remained in the bar.

Arena further testified that he watched the tables where Kelly McCarthy and Rhonda Cudney were each sitting but that he was not overly concerned because "[v]ery, very seldom do you have women get up and start knocking each other around." In fact, Oscar's had never experienced a fistfight between two women. Arena believed the incident was a momentary thing, maybe a misunderstanding, that it was sufficiently settled, and that it was not a problem. Plaintiff herself testified that she was not worried, and other patrons testified that they were not worried for their safety.

Sometime after the disturbance involving the two women, their brothers, David Cudney and Mike McCarthy, arrived at the bar. David Cudney sat with his sister at the "Cudney table,"

and Mike McCarthy sat at the "McCarthy table." Plaintiff was seated somewhere in the vicinity of the two tables. (It is difficult to determine exactly where plaintiff was sitting, for, while a drawing was used during the course of the trial and while the index to the bill of exceptions states that the drawing and a variety of other exhibits are contained in separate volumes to the bill of exceptions, those volumes were not filed with the clerk of this court. See Neb. Ct. R. of Prac. 5C(5) and 5F (rev. 1986), dealing with the responsibility for filing and the proper placement of exhibits in a bill of exceptions. Nonetheless, we have, in this instance, reviewed the case, as the missing exhibits do not appear to bear in any crucial way on the question involved.)

The exchange of words between the Cudney table and the McCarthy table escalated until, about an hour after the disturbance involving the two women, David Cudney was seen to "fly" over a table, and a physical fight broke out between the brothers. There is no evidence the exchanges between the two tables were such that Arena was or should have been aware of them. After the brothers began to fight, others also became involved, but it is not clear whether they were participating in the fight or trying to break it up.

When the fight started, plaintiff decided to go to the restroom and wait it out. As she was getting up from her chair, some unknown person knocked her to her knees, and she was severely injured. The fight stopped when those involved realized that plaintiff had been hurt.

This review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can only draw but one conclusion from the evidence, *Bourke v. Watts*, 223 Neb. 511, 391 N.W.2d 552 (1986), that is, when the controversy is properly resolved as a matter of law. *Herman v. Bonanza Bldgs., Inc.*, 223 Neb. 474, 390 N.W.2d 536 (1986). Further, in considering a motion for a directed verdict, the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed, and the party against whom the motion is directed is entitled to the benefit of all proper inferences which can reasonably be deduced therefrom.

*Myers, Trustee v. National Transp., Inc.*, 223 Neb. 688, 393 N.W.2d 43 (1986).

This court recently considered the liability of a business proprietor to a patron in *Harvey v. Van Aelstyn*, 211 Neb. 607, 319 N.W.2d 725 (1982). Therein, another bar customer, without prior warning, grabbed and shoved the assaulted patron's dancing partner aside with such force as to propel her to the floor, and immediately thereafter struck the patron in the face, severely injuring him. In sustaining a directed verdict in favor of the bar owner, *Harvey* relied upon *Hughes v. Coniglio*, 147 Neb. 829, 25 N.W.2d 405 (1946), and the Restatement (Second) of Torts § 344 (1965), and applied the rule that

> "the proprietor of a place of business who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the premises for such a purpose for bodily harm caused to them by the accidental, negligent, or intentionally harmful acts of third persons, if the proprietor by the exercise of reasonable care could have discovered that such acts were being done or were about to be done, and could have protected the members of the public by controlling the conduct of the third persons or by giving a warning adequate to enable them to avoid harm. . . ."

*Harvey* at 611-12, 319 N.W.2d at 727-28.

*Hughes* affirmed a judgment of dismissal entered at the close of the patron's evidence. The patron was stabbed, just as he entered defendant's restaurant, as the result of a fight between two other customers. In reaching its decision the *Hughes* court noted that the altercation happened suddenly, unexpectedly, and without warning and that there had been no prior history of altercations.

The tavern owner in *Welsh v. Zuck*, 192 Neb. 1, 218 N.W.2d 236 (1974), maintained a firing range under the bar. A customer who used the range kept his gun at the bar. On the day in question the customer took the unloaded gun from the bar, left the bar, loaded the gun, and returned within the hour. Thinking that he heard some disparaging remarks concerning his wife, the customer took out the gun to fire it in the air. Another customer attempted to disarm him, and a bystander patron was

injured when the gun went off in the ensuing struggle. In concluding that the trial court erred in not directing a verdict for the tavern owner, this court stated:

> It seems clear that the primary or proximate cause of the accident in this case was not the knowledge of the tavern owner that Rima prior thereto had a gun on the premises, but the acts of the defendant Rima in reloading the gun after leaving the tavern, returning to the tavern, and engaging in the fight which has been described. There was no possible way that defendant Zuck could have foreseen that the above events would transpire; nor was there any possible or reasonable way for him to have prevented what eventually happened.

*Id.* at 9, 218 N.W.2d at 241.

The patron in *Crane v. Whitcomb*, 160 Neb. 527, 70 N.W.2d 496 (1955), was shot outside the tavern by the tavern owner's husband following an altercation which began inside the tavern. In reversing a judgment for the patron, this court noted that the patron had left the premises because he thought the husband was going to get a gun, and then drove back to the bar when the husband called for him. The shooting took place in a struggle outside the bar. Although the *Crane* court discussed the patron's own contributory negligence, it concluded that the owner had not been negligent.

However, questions for the jury both on the issue of the bar's negligence and the patron's contributory negligence were presented in *Fimple v. Archer Ballroom Co.*, 150 Neb. 681, 35 N.W.2d 680 (1949). Therein, a female patron attending a New Year's Eve dance was injured by a beer bottle which was thrown at her from a table of boisterous veterans. In celebrating their reunion the veterans had become intoxicated, and over a period of 1½ hours used loud and profane language, broke several glasses, and threw a whiskey bottle. Throughout the 1½ hours preceding the incident resulting in her injuries, the patron had been sitting next to the table from which the bottle was thrown.

The law as developed in the foregoing cases leads to the conclusion that the district court correctly determined that as a matter of law the argument between Rhonda Cudney and Kelly McCarthy did not make it foreseeable that their brothers would

later arrive and get involved in a fight, at the start of which plaintiff would be injured. Unlike the situation in *Fimple*, there was not in the present case a continuing disturbance for such a length of time as to have warned defendant that the safety of its patrons was at risk. On the contrary, the initial disturbance involving the two women had subsided; plaintiff was injured just as a sudden and unexpected fight broke out without warning between the brothers.

Furthermore, there is absolutely no showing that plaintiff was knocked down as a consequence of the fight. It would be no more speculative to conclude that she was accidentally knocked down by someone who was not involved in the fight. Thus, not only was the defendant not negligent but plaintiff failed to show that the fight proximately caused her injuries. *Prorok v. County of Custer*, 221 Neb. 789, 381 N.W.2d 106 (1986).

The judgment of the district court being correct, it is hereby affirmed.

AFFIRMED.