STATE OF NEBRASKA, APPELLEE, V. DYANE M. BROCK, APPELLANT.

512 N.W.2d 389

Filed March 4, 1994.   No. S-93-161.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

GRANT, J., Retired.

Defendant, Dyane M. Brock, was charged with assault in the first degree and with the use of a firearm in the commission of a felony. After the evidence in defendant's jury trial was completed, the court instructed the jury as to the crime of assault in the first degree and the crime of use of a firearm in the commission of a felony. In an instruction conference, defendant's counsel stated she did not request an instruction on assault in the second degree. Defendant was convicted and was sentenced to 4 to 6 years' imprisonment on the assault charge and a consecutive sentence of 3 to 5 years' imprisonment on the firearm charge, with appropriate credit of 227 days for time served. Defendant timely appealed, and in this court she assigns a single error: that the trial court erred in failing to instruct the jury on the lesser-included offense of assault in the second degree.

The facts in the record show that about 9 p.m. on June 19, 1992, at the ShopKo store at 144th and West Center Road in Omaha, Douglas County, Nebraska, James Royer, who was employed there as a part-time security agent, saw a woman, later determined to be defendant, in the garden department. Defendant was pushing a shopping cart with a Weed Eater in the basket. Royer's attention was drawn to her because she

glanced over the top of the cart and watched him as he walked by. He stood behind a floor sign where defendant could not see him and watched her for 3 or 4 minutes. Defendant was standing by the greeting card aisle with a card in her hand, acting as if she were reading it, but each time a customer walked by, her eyes followed the passerby. Royer testified: "All of a sudden she put the card back on the rack and she proceeded past the cash register 15 out the doors." Defendant pushed the cart past the cash register and into the foyer of the store where Royer proceeded to stop her.

As defendant started through the first set of doors, Royer said, "Ma'am, I need to talk to you." Defendant did not acknowledge him at all, but pushed the cart to the side, taking her purse out at that time. As she started through the final set of doors, he said again, "Ma'am, I need to speak to you." Royer had the door open and was outside the building when defendant turned toward him with a silver automatic pistol in her right hand. She pointed it at Royer's stomach. He started to retreat. There was a loud explosion of the gun, and he felt a sharp pain in his right leg as he went down. Royer testified:

> As I was laying [sic] on the floor, I hollored [sic], I said, "She shot me," and I said, "Somebody get her license number." About that time I noticed she was still on the doors, her arm came up into a pointing position and for some reason she turned and ran.

Royer's testimony was corroborated by Linda Johnson, a shopper who was leaving the store through that same exit as the incident occurred. She testified defendant was 2 to 3 feet from Royer. Johnson thought defendant might kill Royer because defendant had the gun pointed directly at him. Defendant did not have the gun in her hand as she was pushing the cart. Johnson saw her take the gun out of her purse. Defendant then ran to a waiting car and escaped.

A witness gave police a description of the car and its license plate number. That information led police investigators to defendant on June 26, 1992, at an Omaha residence where the car with that license plate number was in the garage.

Defendant testified in her own behalf. She admitted having had the gun used in the incident for 6 to 8 years and testified that

she recovered it from a friend on the day of Royer's shooting. Defendant testified she had been shopping and had purchased and paid for some items. She admitted that as she left the ShopKo store, she tried to take a Weed Eater without paying for it. As she started out the door, she heard a man say twice, "Ma'am, ma'am, I would like to talk to you." Defendant then testified:

> After he said that the second [time,] I was going in through the middle of the door and I had my purse like part of my hand[.] I had the cart and I let go of the cart and I unzipped it and he was coming up to me and I took it out and then it went off.
>
> . . . .
> . . . I was trying to show him that I had a gun and I was going to put it back in but it went off.

Defendant denied aiming the gun. She testified that she was surprised when it went off and that she left because she was scared. Defendant testified that she wanted to scare the security officer and that "[w]hen I was showing it to him, it just went off." She also testified, "I didn't aim it at no one[,] I just took it out and it went off, as soon as I took it out it we want [sic] off." Defendant admitted pulling the trigger, but denied she did so intentionally. She testified, "I reached down and grabbed it and I was just bringing it out and it went off."

Before addressing the single assigned error, it is necessary to consider a point that defendant's appellate counsel, who replaced defendant's trial counsel, slides past to reach the alleged error of the court. Defendant relies on the general statement of law that it is the duty of the trial court to instruct the jury on the law of the case whether requested to do so or not. *State v. Clayburn*, 223 Neb. 333, 389 N.W.2d 314 (1986).

Relying on such a statement, in this case, shows a callous disregard for the facts before us. In the instruction conference after the evidence was concluded, the record shows the following:

> THE COURT: . . . The Court considered instructing on the charge of assault in the second degree. I take it the defendant objects to the instruction on assault in the second degree?

[Counsel for defendant]: Defendant has not asked for the instruction, is not requesting that instruction.

THE COURT: And I take it the defendant has no requested instructions at all at the present time; is that correct?

[Counsel for defendant]: That is correct.

Defendant specifically accepted the instructions as given.

The underlying question before us really is, Can defendant now urge as error an action of the court which defendant has directly invited the court to commit?

In this case, defendant's counsel specifically informed the trial court she did not want any instruction on second degree assault. Now, on appeal, different counsel contends the court should have given the precise instruction that defendant did not want given. To follow defendant's request on appeal would make more difficult the minefield that each trial judge must traverse to reach the goal of submitting a criminal case fully, fairly, and properly to the jury. Defense counsel have a duty not to affirmatively mislead the court, and trial counsel forthrightly performed that duty by objecting to an instruction she did not want. As stated above, different appellate counsel has resurrected the issue.

We decide this case on the basis that a defendant in a criminal case may not take advantage of an alleged error which defendant invited the court to commit. *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993); *State v. Red Kettle*, 239 Neb. 317, 476 N.W.2d 220 (1991); *State v. Ditter*, 232 Neb. 600, 441 N.W.2d 622 (1989). We affirm the judgment of the trial court.

In an effort toward judicial economy in avoiding future episodes similar to the one presented in this case, we note that in any event, the trial court did not err in refusing to instruct the jury on the alleged lesser-included offense of second degree assault.

In *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993), this court returned to the statutory-elements approach in determining issues as to lesser-included offenses. We stated:

Consequently, a court must instruct on a lesser-included offense if (1) the elements of the lesser offense . . . are such that one cannot commit the greater offense without

simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.

*Williams,* 243 Neb. at 965, 503 N.W.2d at 566.

We also stated in *Williams* that first, second, and third degree assaults are all general intent crimes. (Third degree assault is not involved in this case because the parties stipulated that the gunshot wound to Royer constituted a serious bodily injury.) Insofar as the elements of the crimes are concerned, second degree assault is fully encompassed within the elements of the offense of first degree assault, thus satisfying the first prong of the test set out in *Williams.*

However, when one applies the second prong of the test, it is clear that in this case no instruction on the lesser-included offenses need be given. The evidence in the case before us presents no rational basis for acquittal of a charge of first degree assault and conviction of second degree assault. The carefully presented defense in this case was that there was an accidental shooting, or, in other words, that defendant had no criminal intent.

As stated by defendant's counsel at sentencing, "[W]e still maintain that the shooting itself was accidental . . . ."

Accident was probably one of the very few possible defenses available to defendant in this bizarre, Wild-West, cops-and-robbers shooting tale of the attempted theft of an inexpensive Weed Eater and the senseless wounding of a man trying to do his job courteously and effectively.

The judgment is affirmed.

AFFIRMED.