JANIS L. ERICHSEN, APPELLANT, V. NO-FRILLS SUPERMARKETS OF
OMAHA, INC., A NEBRASKA CORPORATION, AND HAROLD
COOPERMAN, AN INDIVIDUAL, APPELLEES.
518 N.W.2d 116

Filed July 1, 1994.    No. S-92-1119.

Robert C. Guinan, of Guinan & Scott, and Kirk L. Meisinger, of Meisinger & Spindler, for appellant.

John R. Douglas, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

LANPHIER, J.

This appeal arises out of a personal injury action. Janis L. Erichsen, appellant, a customer of appellee No-Frills Supermarkets of Omaha, Inc. (No-Frills), sustained injuries as a result of being dragged by a car during an attempted purse-snatching in No-Frills' parking lot. Appellee Harold Cooperman owns the shopping center. Appellant sought

recovery from appellees for negligently failing to warn her of prior criminal activity which occurred on "at least ten occasions" in or about the parking lot or for failing to protect her from criminal activities which were allegedly foreseeable because of such prior criminal activity. The district court sustained appellees' demurrers, finding that neither appellee owed a duty to appellant.

## STATEMENT OF FACTS

In her third amended petition, appellant alleged that on July 28, 1991, at 6 a.m., she went shopping at No-Frills located in Cooperman's shopping center, known as Harold's Square Shopping Center, at 8005 Blondo Street in Omaha and parked her vehicle in No-Frills' parking lot area. While returning to her vehicle, she was assaulted, beaten, and robbed of her purse by at least one assailant. In the course of the assault and robbery, appellant, who was outside the assailant's vehicle, became entangled in the safety belt or seat of the vehicle. As a result, appellant was dragged on the pavement for approximately 1.6 miles and severely injured.

Appellant claimed that on at least 10 occasions within a 16-month period prior to the assault on appellant, similar crimes, including theft, purse-snatching, and robbery, had been committed in the No-Frills parking lot or in surrounding premises and parking lot. Appellant further alleged that appellees knew or should have known that under the foregoing circumstances, their practice of maintaining fewer employees to assist customers to their vehicles increased the risk of criminal activity against appellees' customers. Appellant claimed that appellees had a duty to foresee the type of criminal activity of which appellant was a victim and to take steps to guard her against the harm or at least warn her of the risk. Appellees demurred, stating that the facts pled were insufficient to state a cause of action. The district court sustained the demurrer.

Appellant's sole assignment of error asserts that the district court erred in sustaining the demurrer of appellees on the grounds that appellees did not owe appellant a duty of due care.

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate

court accepts the truth of facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but it does not accept as true the conclusions of the pleader. *Durand v. Western Surety Co.*, 245 Neb. 649, 514 N.W.2d 840 (1994).

## NEGLIGENCE

For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty. *Schmidt v. Omaha Pub. Power Dist.*, 245 Neb. 776, 515 N.W.2d 756 (1994). "Duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff, and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. *Id*. A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. *Id*. Foreseeability is a factor in establishing a defendant's duty. *Id*.

### RESTATEMENT (SECOND) OF TORTS

We have adopted the rule regarding landlord liability to business invitees, as set forth in Restatement (Second) of Torts § 344 (1965). See, *C.S. v. Sophir*, 220 Neb. 51, 368 N.W.2d 444 (1985); *Harvey v. Van Aelstyn*, 211 Neb. 607, 319 N.W.2d 725 (1982); *Hughes v. Coniglio*, 147 Neb. 829, 25 N.W.2d 405 (1946). The Restatement, *supra*, at 223-24 provides:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Comment *f*. to § 344 makes it clear that the owner of the property is not an insurer of the land or the visitor's safety while

on it. However, liability will be found under certain circumstances:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. *He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual.* If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, *either generally* or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford reasonable protection.

(Emphasis supplied.) *Id*. at 225-26.

### NEBRASKA PREMISES LIABILITY

We have interpreted the Restatement and have held that a landlord is under a duty to exercise reasonable care to protect his patrons. Such care may require giving a warning or providing greater protection where there is a *likelihood* that third persons will endanger the safety of the visitors. *C.S. v. Sophir, supra.*

We have applied these principles in several cases. In *Harvey v. Van Aelstyn, supra*, we held that no liability attached to the owner of a bar where the appellant, a patron, was assaulted by a third party while in the bar. The assailant had not been present in the bar, but had entered the bar suddenly, went straight for the appellant, and struck him. The assailant had been violent in the establishment on *one* prior occasion a year or more prior to the incident at issue. We stated that the possessor of the premises was not bound to anticipate the unforeseeable independent acts of third persons, nor did she have a duty to take precautionary measures to protect against such acts, because those acts could not be reasonably anticipated.

In *Harvey*, we cited several cases in reaching this conclusion. One case, *Hughes v. Coniglio*, 147 Neb. 829, 25 N.W.2d 405 (1946), denied recovery against a restaurant owner where a patron suffered injuries from an assault by another patron. This court noted that there was no history of any fights in the establishment and that the assault occurred suddenly and unexpectedly where no precautionary measures would have prevented the assault.

In *C.S. v. Sophir, supra*, the plaintiff, a tenant in the defendant landlord's apartment complex, was sexually assaulted. There had been one prior assault in the complex. We held that it would be unfair to impose liability upon a landlord based on a *single* prior assault at the complex. This court noted that other jurisdictions that had imposed liability upon a landlord under similar circumstances had done so only where there was a "history of criminal activity at the leased premises sufficient to create in the landlord constructive notice of the foreseeability that such activity would recur in the future." 220 Neb. at 53-54, 368 N.W.2d at 447.

The most recent case involving landlord liability for the acts of third persons is *K.S.R. v. Novak & Sons, Inc.*, 225 Neb. 498, 406 N.W.2d 636 (1987). In *K.S.R.*, the appellant was sexually assaulted in the apartment complex owned by the appellee. The assailant had been seen by the building manager several times near the complex exhibiting inappropriate sexual behavior in public. This court reaffirmed the holdings of the prior cases involving the same issue by stating that "a landlord is not an insurer of a tenant's safety. However, a landlord has a duty to protect a tenant against the foreseeable criminal acts of a third person." *Id.* at 500, 406 N.W.2d at 638.

In *K.S.R.*, we held that unlike *Sophir*, there was a history of criminal activity on the premises, and therefore the assault perpetrated against the appellant was foreseeable. In finding that liability could be imposed against a landlord for reasonably foreseeable criminal acts of third parties, this court cited *Waters v. New York City Housing Authority*, 69 N.Y.2d 225, 505 N.E.2d 922, 513 N.Y.S.2d 356 (1987), and quoted:

"It is also now beyond dispute that a landlord, private or public, may have a duty to take reasonable precautionary

measures to secure the premises if it has notice of a likelihood of criminal intrusions posing a threat to safety [citations omitted]. . . . [A] building owner who breaches such a duty may be held liable to an individual who is injured in a reasonably foreseeable criminal encounter that was proximately caused by the absence of adequate security [citations omitted]."

225 Neb. at 500-01, 406 N.W.2d at 638.

This court has denied relief where the appellant based his or her allegations of negligence on a single act of violence. In those cases, we held that one incident did not, under the facts presented in those cases, constitute sufficient notice to make the criminal acts sued upon reasonably foreseeable. See, *C.S. v. Sophir*, 220 Neb. 51, 368 N.W.2d 444 (1985); *Harvey v. Van Aelstyn*, 211 Neb. 607, 319 N.W.2d 725 (1982); *Hughes v. Coniglio, supra*. However, as *K.S.R.* demonstrates, a duty to undertake reasonable precautionary measures will be imposed on the landlord when there is a sufficient amount of criminal activity to make further criminal acts reasonably foreseeable. The question is one of foreseeability. The trial court was in error in determining that the prior criminal activity must all involve the same suspect to make further criminal acts reasonably foreseeable. In *K.S.R.*, the prior criminal activity did involve the same suspect. However, this is not a required element of the foreseeability of further criminal acts. Under our standard of review, the allegation of many occasions of "similar" criminal activity in one fairly contiguous area in a limited timespan may make further such acts sufficiently foreseeable to create a duty to a business invitee.

We find that appellant has pled sufficient facts which, if accepted as true (as we are required to do under applicable law), are legally sufficient to support appellant's assertion that appellees owed her a duty of reasonable care which they breached. Appellant alleged that

[o]n at least ten occasions within the sixteen month period preceding July 28, 1991 [the date of the attack upon the appellant], criminal activity of a nature similar to that involved in this action occurred in the No-Frills parking area or upon the surrounding premises and parking lot.

> Included within the criminal activities were thefts, a purse snatching, and robbery . . . . At least some of the criminal activity prior to July 28, 1991, including the purse snatching, took place on the No-Frills parking area and involved invitees of No-Frills as victims of the criminal activity.

Appellant also alleged that appellees knew or should have known that absent adequate security, criminal activity was likely to take place within the No-Frills parking area.

Although appellant concedes that not all of the criminal activities took place in the No-Frills parking lot, she did allege that at least some of the incidents of criminal activity, including a purse-snatching, actually took place on the area of the parking lot assigned to No-Frills. Criminal acts that occur near the premises in question give notice of the risk that crime may travel to the premises of the business owner. *Murrow v. Daniels*, 321 N.C. 494, 364 S.E.2d 392 (1988); *Brown v. J. C. Penney Co.*, 297 Or. 695, 688 P.2d 811 (1984); *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881 (Mo. 1983). Accordingly, the district court erred in sustaining the demurrer.

We do not now determine what specific measures business possessors must employ to protect business invitees. Rather, we continue to hold that a business possessor must exercise reasonable care to keep the premises safe for its business invitees. See, *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992); *Kliewer v. Wall Constr. Co.*, 229 Neb. 867, 429 N.W.2d 373 (1988); *Havlicek v. Desai*, 225 Neb. 222, 403 N.W.2d 386 (1987). Whether particular measures discharge a business owner's duty to exercise reasonable care is decided in hindsight with the benefit of knowledge. See *id*. Speculating on the cost of given measures in light of their relative benefit is not within the province of this court. See, *Anderson v. Service Merchandise Co., supra* (we did not speculate as to how a light is properly hung); *Havlicek v. Desai, supra* (we did not speculate on how many lumens would be sufficient to light the stairway); *Nownes v. Hillside Lounge, Inc.*, 179 Neb. 157, 137 N.W.2d 361 (1965) (we did not speculate on how a barstool should be fastened to the floor).

## CONCLUSION

We find that appellant has alleged sufficient facts in her petition to overcome the demurrer of appellees. The cause is therefore remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

FAHRNBRUCH, J., dissenting.

I respectfully dissent from the majority's opinion, which, in effect, holds that a business owner who is aware of prior criminal activity in the immediate vicinity of the owner's place of business is under a duty to either warn potential customers of the criminal activity or to provide security to business invitees.

The majority extends this state's doctrine of what it characterizes as "premises liability" far beyond any of this court's previous holdings. This court has previously considered pure premises liability to arise out of a defect or condition of the premises, rather than from the acts of third parties. See, e.g., *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983) (holding that accident which occurred when employees failed to move grain cars in reasonable manner was not a case of premises liability). However, in the present case, the majority is willing to impose "premises liability" upon a defendant for the independent and random criminal acts of a third party.

Citing Restatement (Second) of Torts § 344 (1965), the majority has found that Erichsen's allegation of 10 incidents of criminal activity in the vicinity of the No-Frills parking lot during the previous 16 months is sufficient to raise a factual question whether the attack on Erichsen was foreseeable by No-Frills.

The issue of foreseeability was discussed by the District of Columbia Court of Appeals in *Cook v. Safeway Stores, Inc.*, 354 A.2d 507 (D.C. App. 1976), a case with facts strikingly similar to the one before us. In *Cook*, a customer at a grocery store attempted to restrain a man who had taken her wallet from her shopping cart. When the customer grabbed the man's arm, the man struck her in the face with his fist and ran from the store. The customer sued Safeway to recover for her personal injuries sustained in the incident.

Plaintiff's counsel argued that the store was located in a high-crime area, that similar incidents had occurred there and in the adjacent streets, that assaults on customers were foreseeable by store management, and that the store had a duty to provide guard service. The trial court directed a verdict in favor of Safeway after plaintiff's opening statement, holding that plaintiff had not stated a cause of action.

The District of Columbia Court of Appeals affirmed the order of the trial court. That court noted that crime was foreseeable, but held that the act of the customer in attempting to physically restrain a purse-snatcher was not one which the storekeeper could anticipate, and thus, the events leading to the customer's injury were not foreseeable by Safeway.

Quoting *Goldberg v. Housing Auth. of Newark*, 38 N.J. 578, 186 A.2d 291 (1962), the court stated:

> "Everyone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide 'police' protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable.
>
> "The question is not simply whether a criminal event is foreseeable, but whether a *duty* exists to take measures to guard against it. . . ."

*Cook*, 354 A.2d at 509-10.

Similarly, while a purse-snatching in the No-Frills parking lot is certainly foreseeable by both No-Frills *and* Erichsen, it is utterly unforeseeable by No-Frills that a purse-snatching victim in the parking lot would somehow become entangled in the seatbelt of her assailant's automobile and be dragged 1.6 miles. By its holding that "many" occasions of " 'similar' " criminal activity in an area may be sufficient to make further criminal acts foreseeable, the majority has done no more than state the obvious and has created a broad category of civil liability for business owners in Nebraska. I would adopt a more narrow

analysis and hold that Erichsen's petition failed to state a cause of action because No-Frills could not possibly have foreseen the bizarre events leading to Erichsen's injuries.

Having determined that criminal acts in its parking lot were foreseeable by No-Frills, the majority concludes that Erichsen has pled sufficient facts to impose some amorphous duty of reasonable care upon No-Frills. However, the majority declines to determine in what way No-Frills might have met its duty to Erichsen, stating that "[s]peculating on the cost of given measures in light of their relative benefit is not within the province of this court." If the majority is unwilling or unable to more clearly define the duty of a business owner to customers, the matter should be left to the Legislature and not to speculation of the business owner.

Although in some cases it may be inappropriate for the court to speculate on how a defendant may meet a duty, the cases cited by the majority do not support this proposition. In none of the three cases cited by the court was the issue of duty before the court. Both *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992), and *Nownes v. Hillside Lounge, Inc.*, 179 Neb. 157, 137 N.W.2d 361 (1965), dealt with the issue of whether the instrumentality of harm was within the exclusive control of the defendant for purposes of res ipsa loquitur. In *Havlicek v. Desai*, 225 Neb. 222, 403 N.W.2d 386 (1987), the defendant acknowledged that he had a duty to keep his business premises safe for the plaintiff's use. Therefore, it was not necessary in any of the three cases for the court to speculate on the extent of the defendant business owners' duties.

On the other hand, this court has in some cases defined the duty which it imposed upon a defendant. See, e.g., *Schmidt v. Omaha Pub. Power Dist.*, 245 Neb. 776, 515 N.W.2d 756 (1994) (holding that defendant underground utility clearinghouse had duty to warn callers that only equipment owned by member utilities would be located and to specifically warn that secondary electric lines in a commercial setting would not be located by the member electric company).

By offering no guidance as to how such business owners may conduct their businesses within the bounds of the law, the majority imposes an unreasonable burden upon business

owners. Because the majority refuses to speculate, it is now well-intentioned business owners who are left to speculate as to what duty is owed to customers or prospective customers in the store parking lot. Thus, the majority has set the classic "trap for the unwary," for only when the litigation trap is sprung will the business owner finally learn the extent of the duty owed.

According to Restatement (Second) of Torts § 344 (1965), a business may meet its duty to its customers by either giving an adequate warning or providing protection. To hold that a business owner has a duty to warn of potential criminal activity in the vicinity of the owner's business is to require the owner to warn of the obvious: The world is a dangerous place. Random acts of crime and violence against the person are rampant in today's society and are of epidemic proportions. This is common knowledge and is sufficient to put everyone on notice that a person can be mugged any time, any place. I would find a warning in such a situation to be a futile and unreasonable requirement.

The alternative to warning invitees is for business owners to "provide protection." Presumably, this means that the business is required to hire security guards for the premises.

Even with all of modern technology, the existence of armed police does not prevent crime and violence in society at large, for an obvious reason: The police cannot be in all places at all times. Similarly, armed security officers are unable to prevent crime and violence in the microcosm of a parking lot. Security officers themselves have been the victims of violent crime while on duty. See, e.g., *State v. Brock*, 245 Neb. 315, 512 N.W.2d 389 (1994) (security officer shot while attempting to apprehend shoplifter). Moreover, security officers are ordinarily hired for the purpose of protecting the business itself against criminal activity, and any benefit to customers is incidental thereto.

There is no duty on the part of an invitor owner to protect, or to warn, an invitee against hazards which are known to the invitee or are so apparent that he may reasonably be expected to discover them and protect himself. *Bruyninga v. Nuss*, 216 Neb. 801, 346 N.W.2d 245 (1984). Because I would find that the hazard of random criminal activity is as well known to customers such as Erichsen as it is to businesses such as

No-Frills, I would hold that No-Frills had no duty to either warn or protect Erichsen.

Finally, while recognizing that the owner of property is not an insurer of the owner's land or the visitor's safety in a parking lot, the majority has, in fact, made business owners the insurers of the safety of invitees. The economic impact of such duties is certain to be especially disastrous to low-profit-margin businesses. The grocery business comes to mind.

Must the business owner erect a billboard in the owner's parking lot to advise potential customers of the perils of possible victimhood to which they may fall prey should they decide to exit their vehicles? Yes, according to the Restatement, *supra* at comment *g*. at 226 (rule applies "not only to make it the possessor's duty to protect his visitors after they have entered the land, but also *to warn them before their entry of any acts or threatened acts of third persons which may endanger them if they enter*" (emphasis supplied)). Once such a billboard is in place, will potential customers ever become actual customers? It seems unlikely that any business could survive such a "warning." The rule is unrealistic in today's world.

Additionally, the provision of a full panoply of security personnel is inconsistent with the basic premise of "no-frills" or discount retail operations; that is, the business saves money by providing less service but passes along this saving to the customer in the form of lower prices. To the extent that the courts impose a duty upon these establishments to hire additional personnel, they contribute to the economic demise of such businesses.

Moreover, I cannot imagine any insurance company in the world which would be willing to insure a business against intentional criminal acts of third parties directed at actual or potential customers of that business. The entire burden of this uninsurable risk thus falls upon the business owner.

For the reasons discussed above, I disagree with the majority that the events leading to Erichsen's injury were foreseeable, and I find the potential amorphous duties on business owners inherent in the majority's opinion to be both unreasonable and economically disastrous. I would affirm the order of the district court sustaining the defendants' demurrers.